No. 94.—RACHEL E. FLEMING and others, plaintiffs in error, *vs.* JAMES FORAN and WM. LAIRY, defendants in error.

[1.] An executor cannot become the purchaser of land sold under an execution against his testator ; but the sale will be set aside, however fair and honest it may have been, on the application of the legatees, provided such application is made within a reasonable time; otherwise, it will be considered as a waiver or abandonment of the right.

[2.] What shall be deemed a reasonable time, has not been settled by any fixed rule, and seems to depend upon the exercise of the sound discretion of the Court, under all the circumstances of each particular case.

In Equity, in Muscogee Superior Court.   Decision on demurrer, by Judge IVERSON, November Term, 1852.

Thomas Fleming died testate, leaving a considerable estate ; James Sullivan qualified as the executor of the will, and took possession of the estate.   Rachel E. Fleming and others, the legatees under the will, filed a bill against Sullivan, alleging that he permitted three valuable city lots to be sold by the Sheriff of Muscogee County, under a *fi. fa.* against the testator, and became the purchaser himself, at an inadequate price; that he subsequently sold one of the lots to James Foran, and another to Wilson Lairy, both of whom purchased with notice, and full knowledge of the fact that Sullivan had purchased at Sheriff's sale, when sold as the property of his testator; the prayer of

the bill was, to set aside these several sales, and for an account for the rents, &c.

Foran and Lairy demurred to the bill, on the ground that complainants had no equitable right to a decree against them; the Court sustained the demurrer, and complainants excepted.

Johnson and Patterson, for plaintiffs in error.

W. Willams, for defendant in error.

*By the Court.*—Lumpkin, J. delivering the opinion.

This was a bill filed in the Superior Court of Muscogee County, alleging, among other things, that one Thomas Fleming, on the 21st day of March, 1843, made and published his last will and testament, and that he departed this life the same year, leaving the complainant, Rachel E. Fleming, his widow, and two daughters, Eleanor, who has since intermarried with Joseph C. Brewer, and Maria, who has since intermarried with Thomas S. Dunbar, his only heirs and legatees; that James Sullivan was appointed and qualified as executor to the will, and took upon himself the administration of the estate; that the same consisted of town lots in the City of Columbus, on which was a livery stable, personal property and debts due by note and account, of considerable value.

Appended to the bill, is a copy of the will, together with a schedule of the property, choses in action, &c. The bill farther charges, that Sullivan, by virtue of his office of executor, carried on the livery stable which had been owned by the testator, in his lifetime; that the business was profitable, yielding a considerable annual income. The will provided, among other things, that the debts due by the deceased should be paid out of the demands owing to him, and from the income of the estate, which might accrue within the next twelve months after his decease; and that the rest of his estate, real and personal, should be equally divided between the widow and two children. The bill

farther charges that, in the fall of 1844, the Sheriff of Musco-gee County, by virtue of an execution issuing upon a judgment obtained against Fleming in his life time, seized lots Nos. 161, 164 and 405, in the City of Columbus, as the property of the said defendant, and exposed the same to sale at public outcry, the 1st Tuesday in December, 1844, when the same were knocked off to Sullivan, the executor, who procured a title to be made to him by the Sheriff, and went immediately into possession, claiming them as his individual property; that the property has yielded an annual rent ever since, of $1000, or some other large sum. The bill farther charges that, in 1847, Sullivan conveyed lot 405, to James Foran, and states that the com-plainants are informed and believe that Foran purchased of Sul-livan, with full knowledge that Sullivan bought the lot at She-riff's sale, when sold as the property of his testator; that in 1848, Sullivan conveyed the south half of lot No. 161, to one Wilson Lairy, and the bill charges that Lairy bought with a full knowl-edge of his vendor's title.

The complainant offers to refund to Sullivan, the sum which he paid for the property, and prays a general account against Sullivan, as executor, &c.; that the several conveyances from the Sheriff to Sullivan, and from Sullivan to Foran and Lairy, may be set aside, and that the property be re-invested in the es-tate of Fleming. And that the three defendants be decreed to account for the rents, issues and profits of the property, from the date of their respective purchases, to the complainants, &c.

The process annexed by the Clerk to the bill, bears date 23d January, 1852, and it was served shortly thereafter. At the November Term, 1852, Foran and Lairy demurred to the bill, and the demurrer was sustained and the bill dismissed as to them. At the same term, Sullivan answered the bill.

[1.] Was there equity in the bill, as to Foran and Lairy, the two defendants who were discharged?

This is the second time that this question has been discussed by able counsel before this Court, and yet no direct authority was produced upon the question. In *Skrine vs. Simmons*, (11 *Ga. R.* 379,) one of the exceptions taken and argued by the

learned counsel who were engaged in that cause was, " that an administrator, as an individual, has a right to purchase for himself, the property of his intestate, when sold by the Sheriff," but no case was cited by either Mr. Miller or Mr. Jenkins, for or against this proposition. None has been adduced in the present argument. We felt, therefore, almost warranted in concluding, that none existed, and that the point must be decided upon principle, and in a way that would best subserve the public interest.

And after bestowing more than ordinary consideration upon this subject, our judgment is, that an executor or administrator, cannot buy the property of the estate which he represents, even when sold by the Sheriff or other officer appointed by the law for that purpose ; that public policy forbids it.

We admit frankly, that such sales are less objectionable than those which are made by the trustee himself, and where he occupies the double relation of buyer and seller. But the course of reasoning by which we have been conducted to our conclusion, may be stated briefly, and it is this :

It is true that the property being levied on by the agent of the law, *he* may be considered as substituted *pro hac vice*, in lieu of the other trustees ; and that the latter being displaced from his fiduciary character, and the responsibility devolved upon another, the original or general trustee may act as any other individual, in relation to such sale. And to a certain extent, there is truth in this reasoning. But is it true that the original trustee is stripped, by virtue of the seizure by the Sheriff, of all his duties and obligations, in respect to the property levied on ? We think not.

Whose duty is it to represent the interest of the defendant's estate in the matter ? Suppose the Sheriff neglects to perform his duty, and the interest of the estate is prejudiced, is not the executor of the defendant the trustee still of the testator, to see to it that the interest of the estate is not damnified ? If this trust does not devolve upon *him*, upon whom else can it rest ? And shall he be allowed, after having voluntarily assumed this prior obligation, to place himself in a situation where he

cannot discharge his duty, in obedience to his solemn undertaking?

Suppose the executor becoming the purchaser, as in the present case, should fail to comply with the terms of the sale, and the property had to be re-sold, who would represent the interest of the estate in the subsequent proceedings? Various responsibilities, which need not be specified, devolve upon the executor of a deceased defendant, and which it would become hard to perform with fidelity, were he allowed to place himself in an attitude of hostility to the interest of the estate which he is sworn to protect. And this very fact demonstrates the impropriety of allowing such sales to stand.

And this, it occurs to us, is putting this doctrine upon a distinct legal ground, apart from the general objections which may be urged against the validity of such sales such as the superior advantages which it gives to the trustee over other bidders in the market, growing out of his better opportunities of knowing the property, the titles, &c. To illustrate the propriety of this rule, why were these lots suffered to be sold in the very face of the wishes of the testator, as expressed in the will?

Since the argument and delivery of this opinion, I have been fortunate enough to find the following authorities, upon the question under consideration:

In *Torrey vs. the Bank of Orleans*, (9 *Paige*, 650,) it was held to be a settled principle of equity, that a person who is placed in a situation of trust or confidence, in reference to the subject of the sale, cannot be a purchaser of property on his own account. And that this principle is not confined to a particular class of persons, such as guardians, trustees and solicitors; but that it is a rule of Equity of universal application, that no person can be permitted to purchase an interest in property, where he has a duty to perform, inconsistent with the character of purchaser. And Chancellor *Walworth* uses the very language of Lord *Cottenham*, in the case of *Greenlow vs. King*, decided in the Court of Chancery, in England, in January, 1841. 5 *London Juris.* 18.

In *Iddings vs. Bruen*, (4 *Sand. Ch. Rep.* 223,) it was held that the trustee cannot become the purchaser of the property which he holds in trust, adversely to the beneficiary; and that this rule of Equity applies, generally, to a sale under a judgment or decree in favor of strangers to the trust; and so far is this rule extended, that it is laid down that this right to avoid a trustee's purchase of the trust property, is not personal to the *cestui que trust* or beneficiary. It passes to the heirs and legal representatives; and not only that, it is a right in action, to which even creditors may become entitled.

The Vice Chancellor says: "I now approach a series of transactions by which it is claimed that *Mr. Bruen*, in violation of his duty as trustee, suffered large portions of the trust estate standing in his name, to be sold upon various encumbrances, and became the purchaser of the same, in the name of his sons and other persons. A single proposition is sufficient to dispose of all these purchases which were made by Mr. Bruen, either directly or indirectly. As the trustee of the property, he could not become the purchaser. He had a duty to perform in regard to it, which was entirely inconsistent with his assuming that character. And no better illustration of the sound wisdom and morality of the rule which Equity enforces on this subject, can be found, than is furnished in this very case, *by the wanton and reckless sales of the lands of Thomas H. Smith, under the incumbrances with which they were charged, when Mr. Bruen received them in trust.*"

This rule has been asserted in several recent cases. *Van Epps vs. Van Epps*, 9 *Paige*, 238. *Torrey vs. The Bank of Orleans*, 7 *Hill*, 260. *Campbell vs. Johnston*, 1 *Sandf. Ch. R.* 148. *Croom vs. Mitchell*, 1 *Ibid*, 251, and *Dickinson vs. Codwise*, 1 *Ibid*, 214.

[2.] We hold then, that both upon reason and authority, voidable all such purchases are violated at the election of the heirs, provided the same be made within a reasonable time. Failing to do this, they will be held to have ratified the purchase. What shall be held a reasonable time has not been settled by any fixed rule; and seems to depend upon the exercise of the sound dis-

cretion of the Court, under all the circumstances of each particular case. *Hawley vs. Cramer*, 4 *Cowen*, 718.

For some cause or other, this bill is singularly deficient in several respects. It does not even allege, that the two daughters were *minors*, at the time their father died or when they intermarried. Perhaps it would be no hardship to assume that they were of age in 1844, when the bill alleges that the executor took possession of the property as his own. It is very certain that Mrs. Fleming, one of the complainants, and the widow of the testator, was an adult and *sui juris* at that time, and has continued so ever since. The bill should be amended in this particular; also, in another part, where, while an offer is made to refund the puchase money or price at which the land was bid off, no proposition is made to account for the interest on the amount, and yet the complainants pray to have decreed to them the annual rent of the lots.

The decree should be so moulded as to protect as far as possible, Foran and Lairy. Not only the money which would be coming to Sullivan, should be secured to them by the decree, but any other relief afforded, which would be in the power of the Court to bestow.

Of course, all these suggestions are made upon the supposition that notice will be brought home to Foran and Lairy, by the proof of the nature of Sullivan's title; and upon the further and equally important assumption, that the complainants have not slept over their rights so long as to be considered an abandonment of them, and an acquiescence in the sale.