M. S. GRUBBS, plaintiff in error, vs. D. G. McGLAWN, defendant in error.

1. As the equity of this bill is not sworn off by the answer, this Court will not reverse the decision of the Chancellor in refusing to dissolve the injunction and to dismiss the bill.
2. A purchase by an administratrix at her own sale is voidable and may be set aside at the instance of heirs, legatees, or creditors, when necessary to the security of the claims of the latter, if proper proceedings are instituted for that purpose, within a reasonable time.

Administrator's sales. Equity. Before Judge HARRELL. Webster Superior Court. September Term, 1869.

McGlawn, by his bill, filed in 1866, against Mrs. Grubbs, made the following averments : In 1858, he loaned her husband $3,611 85, less the interest of twelve months, and took therefor her husband's note, secured by a mortgage on seven slaves. Grubbs died in 1863, owning eight or nine hundred acres of land, in said county, and certain personal estate. Mrs. Grubbs took possession of his estate as his administratrix, and McGlawn sued her, as administratrix, on said note, to September term, 1866, of said Court. Mrs. Grubbs paid some of her husband's debts out of his personal assets. In the latter part of 1865, Mrs. Grubbs obtained an order from the Ordinary of said county, for the sale of said land for the benefit of Grubb's heirs and creditors, advertised said land for sale, offered it, on sale day, in two parcels, for cash, that one Sackett bid in all said land at her request, at $1,200; she made a deed, as administratrix, to him, and he immediately reconveyed it to her, no money having passed nor any consideration having been paid for either of said conveyances. No debts were pressing upon said estate to necessitate said

Grubbs *vs.* McGlawn.

sale; it was made when there was but little money in the country, when there were no mails, except by railroads, when the newspaper, in which the notice of sale was published, probably did not reach a dozen persons in said county, and she made the sale thus, and when she did, for the purpose of buying the land at a nominal sum, in fraud of the creditors; a few days before the sale, McGlawn visited Mrs. Grubbs, to see her about his note, and she told him that he was the principal creditor of her husband's estate and asked him not to sue her, showed him forty acres of land prepared for cotton, told him she did not wish to sell her husband's land and thought she could make enough on said forty acres to pay her husband's debts—that, if she failed in this, she would, the next winter, sell the three hundred acre tract next to Preston, in said county, and pay the debts, and thus keep five hundred acres for herself and children. Had he not believed these fraudulent statements of her purposes and wishes, McGlawn would have attended said sale, and made said land bring its value. Said lands, at a fair sale, and at a fair price, would have discharged all of Grubbs' debts; but, as it is, its price and the value of the personality will not pay one half of them. Mrs. Grubbs has no property but said land.

He prayed that her said sale and conveyances be declared void, and that meanwhile she be enjoined from selling the land, etc. The injunction was granted by Judge Clark. Mrs. Grubbs answered the bill, denying no part of its averments, except the charge of bad faith and that she told McGlawn she did not wish to sell the land and would pay off the debts in the manner stated by the bill and that money was unusually scarce; she said that mails were carried by private hands, and newspapers were eagerly sought for and that she did not doubt that the sale was generally known; that she had not intended buying the land, but sent her son to the sale, with instructions not to let it be sacrificed, and he got Sackett to bid it off for her at about $1,600 00, which was a low price, but was the highest bid at a fairly advertised and conducted sale. She contended that her title was good. Upon the filing of her answer she moved to dissolve the injunction

and dismiss the bill, because it had no equity, or if it had, because her answer had sworn it off. The motion was overruled, and that is assigned as error.

C. B. WOOTTEN, J. L. WIMBERLY, by the Reporter, for plaintiff in error, said the injunction should have been dissolved, because the equity of the bill was sworn off. Swift vs. Swift, 13th Ga. R., 140. And that the title was only voidable by heirs and legatees. Mercer vs. Newsom, 23d Ga. R., 151; Wortley vs. Johnson, 8th Ga. R., 236; Flemming et al., vs. Foran et al., 12th Ga. R., 594.

S. H. HAWKINS, W. A. HAWKINS, for defendant, said the title was voidable by creditors. 5th Vesey, 678, 680; 13th Vesey, 601; Shuer vs. Redwine and wife, 30th Ga. R., 780; Hamson et al., vs. McHenry, 9th Ga. R., 165, 169; Hill on Trustees, 480; Sugden's Lectures on Sales and Purchases, 56–7; 6 Ves., Jr., 628; 5th McLean, 4.

BROWN, C. J.

1. It was insisted that the equity of this bill was fully sworn off by the answer, and that the Chancellor erred in refusing to dissolve the injunction and dismiss the bill. As a general rule, it is the duty of the Chancellor to dissolve the injunction when the equity of the bill is sworn off by the answer of the defendant. But we cannot agree with the counsel for the plaintiff in error that this is such a case.

2. The equity of this bill hangs on the decision of the question, whether the administratrix had the right to purchase the lands of the intestate at her own sale, and whether the sale was good as against creditors. The rule is well settled, in this Court, that such a purchase is not *void* but *voidable*, and that it may be set aside at the instance of heirs or legatees, if they commence proper proceedings for that purpose within a reasonable time. 8 *Ga.*, 236; 12 *Ga.*, 594; 23 *Ga.*, 151; 30 *Ga.*, 780; *Smith vs. Granbury, ante,* 381.

But it is insisted by counsel for plaintiff in error that creditors have no right to have the sale set aside for their benefit, that they have no title to the property, and that the sale is

good as against them, and they must look to the proceeds of the sale for satisfaction; and the case in 23d *Georgia*, 151, is relied on as favoring that view of the case. We are not prepared to say that the position contended for finds no support in that decision. But if the decision was intended to go to that extent, we do not think it can be sustained by reason or authority. Judge Story, in his Equity Jurisprudence, vol. 1, sec. 321, lays down the rule as follows: "And, therefore, if a trustee, though strictly honest, should buy for himself an estate of his *cestui que trust*, and then should sell it for more, according to the rules of a Court of Equity, from general policy, and not from any peculiar imputation of fraud, he would be held still to remain trustee to *all intents and purposes*, and not be permitted to sell to, or for himself." In section 322, he says the true ground is, "that the prohibition arises from the subsisting relation of trusteeship." Newland on Contracts, chapter 32, page 461; 6 Vesey, 625–626; 1 Madd. Ch. Pr., 92–93; 2 Vesey, 138. Again, in the same section, he says: "But the principle applies, however innocent the purchase may be in a given case." 8 Ves., 337–345; 10 Vesey, 381–385; 2 Dow. R., 289–299, (*ante*, sec. 311.) It is poisonous in its consequences. The *cestui que trust* is not bound to prove, nor is the Court bound to decide that the trustee has made a bargain advantageous to himself. The fact may be so, and yet the party not have it in his power distinctly and clearly to show it. There may be fraud, and yet the party not be able to show it. It is to guard against this uncertainty and hazard of abuse, and to remove the trustee from temptation, that the rule does and will permit the *cestui que trust* to come at his *own option* and without showing essential injury, to insist upon having the experiment of another sale. 2 John. Ch. Rep., 252; 10 Ves., 381, 385, 386."

This authority makes the sale voidable in case of any sale and purchase by a trustee at the option of the *cestui que trust*. Now it will not be denied that the administratrix, in this case, was a trustee. Who is the *cestui que trust?* Judge Bouvier's Law Dictionary, vol. 1, p. 232, says: "*Cestui que trust* is a

barbarous phrase to signify the *beneficiary* of an estate, held in trust. He for whose *benefit* another person is enfeoffed or seized of lands or tenements, or is possessed of personal property." Now I ask, for whose *benefit* was this administratrix enfeoffed or seized of this property—for the heirs alone, or first, for the benefit of creditors, and after they are satisfied, then for the heirs? The right of the heirs is postponed to that of creditors. Why then may not the creditors, as well as the heirs, claim the "experiment of another sale," whenever it is necessary to the satisfaction of their just claims? The administratrix is the representative of the rights of the creditors as well as of the heirs.

This Court has decided in 8*th Georgia*, 236, that, "*creditors* and heirs, as a general rule, can only sue third persons through the representative of the estate. The exception is, where there is collusion, insolvency, unwillingness to *collect the assets*, when called on, or some other like special circumstance." In 12 *Georgia*, 598, Judge Lumpkin says: "In Torrey vs. The Bank of Orleans, (9 Paige, 650,) it was held to be a settled principle of equity that a person who is placed in a situation of trust or confidence in reference to the subject of the sale, cannot be a purchaser of property on his own account, and that this principle is not confined to a particular class of persons, such as guardians, trustees and solicitors, but that it is a rule of equity of *universal application*, that no person can be permitted to purchase an interest in property where he has a duty to perform inconsistent with the character of purchaser." It would seem to be quite clear that this administratrix had a duty to creditors to perform that was inconsistent with her character as purchaser. It was her duty to creditors to make this property bring as much as possible. Her character as purchaser was to buy the property for as little as possible. We hold that the purchase by her was not void, but voidable at the option of the creditors, as he had no other estate or property but this land to look to for the satisfaction of his debt. In 30 *Georgia*, 793, this Court uses the following language: "The doctrine, however maintained as it respects this class of trustees by

Grubbs *vs.* McGlawn.

this Court, is this: that where a purchase is made by a *trustee* on his own account, of the *cestui que trust*, although sold at public auction, it is in the option of the *cestui que trust* to set aside the sale, whether *bona fide* made or not, that it is voidable only, and not absolutely void." "This, then, is the unanimous doctrine held by this Court, notwithstanding *obiter dicta* to the contrary. And it is the unanimous judgment (says the Judge) of the present Bench upon this point."

We will add, that if the case in 23*d Georgia* holds a different doctrine, it does not seem to have met the approbation of the Court in the case last cited in 30*th Georgia*, which used the broad terms *trustee* and *cestui que trust*. It is also to be remarked, that the case in 23*d Georgia* was a claim case, and not a proceeding in equity, which distinguishes that from the other cases. In *Wortley vs. Johnson*, 8*th Georgia*, 236, the rule is distinctly laid down that, "If heirs elect to set aside purchases made by executors, administrators, or guardians at their own sale, they must go into equity, and such sales are voidable only, and not *per se* void. In that case the proceeding was by the heirs. But the substance of the rule is, that the *cestui que trust*, whoever he may be, must go into equity to set aside the sale. We think the creditor in. this case has that right.

Judgment affirmed.