MULHERIN SONS & COMPANY *v.* RICE. & O'CONNOR.

When, after the dissolution of a partnership by the death of one of its members, all its choses in action, including a promissory note secured by a mortgage on land, were by agreement left for collection with the surviving partners and "the estate of" the deceased partner, and subsequently the interest of his estate in these choses in action was set apart to certain of his heirs as a portion of their distributive shares in that estate, it was not incumbent upon the surviving partners, in order that these heirs might receive in full their proportion of the proceeds of such note, to make the mortgaged property, though actually worth more than the amount due upon the note, bring that amount at a judicial sale under an execution issued upon the foreclosure of a junior mortgage held by another creditor of the mortgagor. The more especially is this true when, upon being requested by these heirs so to do, the surviving partners distinctly declared before the sale took place that if they bid thereat they would act for and represent themselves alone.

Argued February 7, — Decided March 16, 1899.

Action for damages. Before Judge Eve. City court of Richmond county. July term, 1898.

*F. W. Capers*, for plaintiffs.    *J. R. Lamar*, for defendants.

LUMPKIN, P. J.    The error alleged in the present bill of exceptions is the sustaining of a demurrer to the plaintiffs' petition.    They were John P. Mulherin, Charles P. Mulherin, and Mrs. M. A. Mulherin, but, for some reason not apparent, they sued as a partnership under the name and style of "Wm. Mulherin Sons & Company." The allegations set forth in their petition were, in substance, as follows: The partnership of Mulherin, Rice & Co., composed of William Mulherin, Patrick H. Rice, and Jeremiah J. O'Connor, was dissolved by the death of its senior partner.    All the notes and accounts belonging to this partnership were by agreement left "with the surviving partners and the estate of Wm. Mulherin to collect . . as rapidly as possible."    Subsequently "the estate of the late Wm. Mulherin was divided among his heirs, and the interest of the said estate in the notes and accounts of the late firm of Mulherin, Rice & Company was set aside to your petitioners as a part of their distributive share of said estate."    Among the choses in action held by this firm was a note of James Cothran

Jr., for $1,000, besides interest, secured by a first mortgage on two described tracts of land in South Carolina. The mortgaged premises were worth the amount due upon this note. These tracts of land were brought to sale under the foreclosure of a second mortgage held by one McCormick, which sale was conducted by the sheriff of Abbeville county, South Carolina. Before the same took place, the plaintiffs notified the defendants to protect the interests of the former by bidding at the contemplated sale and making the property bring "the full face value of their mortgage." The defendants, upon receiving this notice, informed the plaintiffs that they would not comply with the request thus made, but that if they bid at the sale they would do so "as individuals and in their own interest." They also informed the plaintiffs that if the latter desired to make the property bring its full value, they had better attend the sale and represent themselves. The sale took place and the defendants purchased the property "for the sum of $700, in fraud of the rights of these plaintiffs and in violation of their trust as trustees of the interest of their late partners in the firm assets." James Cothran Jr., the mortgagor, was insolvent, "and the balance due on said note secured as aforesaid is a dead loss to your petitioners." Accordingly, "through the breach of duty of these defendants in the fraudulent purchase for their own use of this valuable asset held by them in trust in the manner aforesaid, these plaintiffs have been damaged in the sum of $700."

In our opinion, the court was right in sustaining the demurrer. In the first place, it would be a great strain to hold that, under the facts alleged, any trust relation whatever existed between the defendants and the plaintiffs. They sued as a partnership; but treating the members composing the plaintiffs' firm as the heirs at law of Wm. Mulherin, deceased, and dealing with their action as if brought in their character as such heirs, it would seem that the duty of making the South Carolina property bring its full value devolved as much upon them as upon the surviving partners of the firm of Mulherin, Rice & Co. The petition alleges that the choses in action belonging to that firm were left with the surviving partners and "the estate

of" Wm. Mulherin for "collection." The interest of the deceased partner in these notes and accounts was set apart to the plaintiffs, and no reason is alleged why it was not incumbent upon them to look after that interest themselves. Certainly, Rice and O'Connor were under no more obligation to advance money for the purpose of buying in the property at the sheriff's sale than were the plaintiffs. If, therefore, the property had been purchased by Rice and O'Connor for the benefit of all concerned and had brought the full amount due upon the note— say, for example, $1,400,—they, according to the plaintiffs' theory, would have been under a duty of paying the purchase-price, keeping the land, and settling with the plaintiffs with money. That is to say, they would have had to advance the cash necessary to satisfy the interest of the plaintiffs in the note, and then look for reimbursement to a resale of the property. Why this burden should fall entirely upon Rice and O'Connor, and the plaintiffs be wholly relieved therefrom, we are unable to perceive.

But even if the facts alleged can be regarded as establishing a trust relation of any kind between the plaintiffs and the defendants, we are still of the opinion that the latter were not liable as alleged. It will be observed that the sale was made by the sheriff of Abbeville county, S. C. It was not a sale by Rice and O'Connor, nor did they have anything to do with bringing it about. In Allen v. Gillette, 127 U. S. 596, Mr. Justice Lamar said: "The principle that a trustee may purchase the trust property at a judicial sale brought about by a third party, which he had taken no part in procuring, and over which he could not have had control, is upheld by numerous decisions of this court and of other courts of this country," citing Prevost v. Gratz, 1 Pet. C. C. 364, 378; Twin Lick Oil Co. v. Marbury, 91 U. S. 587; Chorpening's Appeal, 32 Penn. St. 315; Fisk v. Sarber, 6 W. & S. 18. In the case last cited it was held by the Supreme Court of Pennsylvania, that the assignee of an insolvent debtor was "not incapable, by reason of his fiduciary character, of becoming the purchaser of the debtor's real estate when sold by the sheriff upon a mortgage which encumbered it before the time of the assignment." In

delivering the opinion of the court, Kennedy, J., (pp. 22, 23) quotes the following from the opinion of Mr. Justice Washington in Prevost *v.* Gratz, supra: "I know of no principle of equity which will invalidate the title of a trustee to land which the law has taken out of his hands and which he purchased from one appointed by the same authority to sell it. This is precisely like the case of an executor who purchases at a sheriff's sale the personal property of his testator, seized and sold under execution. The reasons which forbid a trustee from purchasing trust property where he himself is the seller do not apply in such a case." It would not be difficult to cite other cases to the same effect. We are aware that in *Fleming* v. *Foran,* 12 *Ga.* 594, this court held that: "An executor can not become the purchaser of land sold under an execution against his testator; but the sale will be set aside, however fair and honest it may have been, on the application of the legatees, provided such application is made within a reasonable time; otherwise, it will be considered as a waiver or abandonment of the right." We do not think, however, that the decision in that case in anywise conflicts with what we rule in the case now under consideration. The trust which the law imposes upon an executor is one of which he can not devest himself by any act or conduct of his own. While, therefore, we would not, in view of the decision in 12 *Ga.*, be at liberty to follow literally and to the full extent all that is laid down in the authorities above cited, the principle announced in them is certainly applicable when the fiduciary relation is one which the person standing in the position of a trustee may voluntarily terminate at pleasure upon giving notice of his intention to do so to the party whom he represents. In no view of the facts alleged in the plaintiffs" petition can it be fairly said that Rice and O'Connor occupied a position of trust like that which an executor, under the law fixing his duties and obligations, is compelled to assume.

It seems clear that even if Rice and O'Connor took upon themselves exclusively the "collection" of the note (and certainly their undertaking went no further), it could hardly be expected of them that they should buy in the property given as security therefor, in the event the same should be levied on

and sold to satisfy other claims against the owner held by third persons. But even if the plaintiffs had at any time the right to assume that Rice and O'Connor would represent them in doing all that might be necessary to realize upon the note and security in question, and accordingly to expect that in bidding at a sale of the mortgaged property the defendants would be acting in a fiduciary character, surely the plaintiffs were not justified in relying upon any such assumption after direct and positive notice to them by Rice and O'Connor that if they bid at the particular sale under consideration, they would do so in their own behalf alone. This principle was recognized in Fisk *v.* Sarber, cited above, wherein it was said: "There are cases in which the party acting in a fiduciary character may, by his own act, devest or discharge himself of the power or trust under which he has acted, at pleasure; but then he will not be permitted to act for his own benefit, in opposition to the interests of those for whom he had previously undertaken to act in the matter, without making known to them the fact of his having relinquished his trust or authority to act for them." See, also, Bartholemew *v.* Leech, 7 Watts, 472. One occupying a fiduciary relation, when he is not bound either by law or by contract to represent the interest of another as to a particular matter, may, upon notice that he intends to act for himself alone in regard thereto, completely absolve himself from the obligation of representing such other person. Thus in Baker *v.* Whiting, 3 Summer, 476, it was held: " A purchase by an agent will be deemed, by a court of equity, a purchase for his principals, unless the agent has openly and notoriously, and with full notice to his principals, discharged himself from his agency." It will be observed that while the plaintiffs' petition avers that the purchase by Rice and O'Connor was fraudulent, it clearly appears therefrom that the only fraud relied on or intended to be alleged as having been perpetrated by them was in buying the mortgaged premises exclusively for their own benefit and not for the joint protection of themselves and the plaintiffs. If what we have above laid down is sound, it necessarily follows that the conduct of the defendants in this respect was not in any sense fraudulent. The petition does not

allege that the sale was not fairly conducted, or that Rice and O'Connor did anything whatever to make the property bring less than its value. Presumptively, then, their bid was the highest price the land could be sold for; and, in order to carry out the plaintiffs' idea of what the duty of Rice and O'Connor was in the premises, they would have been compelled, after securing the land by a bid of $700, to raise their own bid and make the land bring about twice as much. Certainly the law does not require any party to be guilty of conduct so absurd. *Judgment affirmed. All the Justices concurring.*