## WARNER *et al. v.* HILL *et al.*

1. Where an administrator purchases directly or indirectly, at his own sale, property of his intestate, such sale is voidable at the election of the heirs at law; and they can move in a reasonable time to have the same set aside.

(*a*) If the heirs at law knowingly receive the proceeds of such sale, they thereby ratify the same, and will be estopped from thereafter attacking the sale.

(*b*) If a guardian of minor heirs receive from such administrator their portions of the proceeds of such sale, and such heirs, after reaching their majority, with knowledge of the facts, treat such funds as their own, and give to their guardian receipts in full therefor, they will be held to have ratified the administrator's sale, and will thereafter be estopped from attacking the same, although they did not actually receive from their guardian such funds for which they so receipted.

2. If, after an administrator buys land at his own sale, the heirs at law, with knowledge of their rights, stand by and allow the purchaser at such sale, or his assignee, to make valuable and expensive improvements on the land so bought, they will be estopped from asserting title thereto against such purchaser or his assigns.

(*a*) Where the court instructs the jury to find a special verdict of the facts only in a cause, and for this purpose propounds to them questions to be answered, it is not error for the court to propound to the jury a question on the theory that the plaintiffs are estopped under the above-recited facts, without defining, in connection with the submission of such question, the circumstances which would make it inequitable for the plaintiffs to assert their claims to an interest in the land so sold, the court having given instructions on this theory after propounding to the jury a question upon the theory of estoppel, and in immediate connection with instructions upon the latter theory.

3. The answer of the jury to question 6, when considered in connection with the charge of the court in reference thereto, and the answer to question 12 are not so contradictory as to be unintelligible.

4. One tenant in common will not be estopped from asserting title to his interest in lands held by him and another tenant in common, by know-

ingly permitting such other tenant, without objection on his part, to erect valuable, permanent and expensive improvements on joint property, during the existence of the joint tenancy, and before the former tenant has been actually ousted by the latter, or until the latter takes exclusive possession of the joint property with notice to his cotenant of his adverse possession.

(a) This rule does not apply where the alleged cotenant making such improvements claims to be the sole owner of the property under an independent title, and holds the same adversely to the person claiming to be his cotenant, and with notice to the latter of such adverse and exclusive possession.

No. 2825. MAY 20, 1922.

Equitable petition. Before Judge Roop. Troup superior court. August 20, 1921.

*T. T. Miller* and *Hatton Lovejoy,* for plaintiffs.

*Little, Powell, Smith & Goldstein* and *E. T. Moon,* for defendants.

HINES, J. For the plaintiffs' case see *Warner* v. *Hill,* 149 *Ga.* 464 (100 S. E. 393), in which this court reversed a judgment of nonsuit. The case is here again, the plaintiffs complaining of the judgment of the trial court overruling their motion for a new trial. The verdict of the jury is in the shape of questions propounded by the court, and answers of the jury to such questions.

1. In the first ground of the amendment to the motion for new trial it is alleged that the jury erred in finding, in answer to question 11, propounded to them by the court, that both Mary Warner and Will C. Warner actually and knowingly received from their guardian some part of the proceeds of the administrator's sale of the land of their ancestor, with knowledge of the irregularities on account of which they attack said sale and seek to recover said land, because said finding of the jury is contrary to the evidence and without evidence to support it. These two plaintiffs testified, that they had never received any part of the proceeds of the administrator's sale of this land from their guardian; that, after this suit was filed, they gave receipts to their guardian, who was their father, in full for their portions of these funds, for the purpose of allowing him to be discharged as such guardian; but no money was actually received by either of them from their guardian. The receipt of Mary Warner, acknowledging the payment to her, after she reached her majority, by her guardian of $495.56, the same shown to be a portion of the proceeds of the sale of this land by the administrator, was in evidence. The sworn

return of her guardian to the ordinary, in which the payment of this money by him to his ward is alleged, was in evidence. The receipt of Will Warner, acknowledging the payment to him, after he became of age, by his guardian of $501.96, the same shown to be a portion of the proceeds of the sale of this land, and the sworn return of his guardian to the ordinary, in which the payment of this money by him to his ward is alleged, were introduced in evidence, and were before the jury. It thus became a question of fact to be settled by the jury, whether they actually received these sums of money from their guardian. They testified that they had not received these sums. In their receipts they acknowledged the receipt of these sums. The sworn returns of their guardian alleged the payment of these sums to these wards. On this conflicting evidence the jury resolved the matter in favor of the defendants.

But the actual receipt of these funds by these wards is not necessary to show their ratification of the illegal sale of this land by the administrator. Of course the receipt by them of their portions of these funds, with knowledge of the facts, would ratify the illegal sale of the administrator. When their guardian received their portions of the proceeds of this sale from the administrator, and they afterwards, with knowledge of the facts, receipted him therefor, this would amount to a ratification of his act in their behalf and of the administrator's sale. They treated these funds as their own. They could have repudiated the administrator's sale and the action of their guardian in receiving for them their portions of the proceeds of this sale; but instead of doing this, they treated these funds in the hands of their guardian as their property, and recognized his liability to them therefor. When they did this and receipted him as their guardian for these funds, they ratified his act in receiving them, and thus ratified the sale of the administrator of this land from which these funds arose. Where executors, acting under direction in the father's will, collected a policy of insurance, to the proceeds of which testator's children were entitled, and for which they could have sued the insurance company thereon, and the children procured a decree in chancery against the executors for the whole amount of the collection, one of them could not afterwards recover against the insurance company in an action on the policy. *Equitable Life Assurance Society* v. *May,* 82 *Ga.* 646 (9 S. E. 597.)

These children had the right, had they chosen to exercise it, to repudiate the act of their guardian in receiving these funds. Instead of doing so, they chose to adopt his act and to receipt him for these funds. If these wards, after becoming of age, had sued their guardian for these funds, with knowledge of the irregularities in the administrator's sale, they would have clearly ratified his act in receiving these funds and the administrator's sale. It amounts to the same thing, when they settled with the guardian, after he received these funds, and receipted him in full therefor, whether they actually received these funds or not. The obtaining of a judgment against the guardian was not essential in order to make their election final. *Ingraham* v. *Barber,* 72 *Ga.* 158; *Smith* v. *Estey Organ Co.,* 100 *Ga.* 628 (28 S. E. 392); *Pearce* v. *Borg Chewing-Gum Co.,* 111 *Ga.* 847 (36 S. E. 457); *McClellan* v. *McClellan,* 135 *Ga.* 95 (68 S. E. 1025); *Board of Education* v. *Day,* 128 *Ga.* 156 (5), 167 (57 S. E. 359). Generally the question of ratification is one which depends upon the intention of the parties, and is a matter of fact to be determined by the jury. *Gray* v. *Bass,* 42 *Ga.* 270; *Burr* v. *Howard,* 58 *Ga.* 564. But when the facts are undisputed, it may become a question of law. The acceptance of the benefit flowing from an unauthorized act amounts to an implied ratification of such act, whether the principal intends to ratify it or not. *Merchants' Bank* v. *Central Bank,* 1 *Ga.* 428 (44 Am. D. 665); *Am. Ex. Bank* v. *Georgia Co.,* 87 *Ga.* 651, 657 (13 S. E. 505); *Murray* v. *Walker,* 44 *Ga.* 58; *McDowell* v. *McKenzie,* 65 *Ga.* 630; *Ingraham* v. *Barber,* 72 *Ga.* 158; *Stanley* v. *Glennville,* 140 *Ga.* 306 (78 S. E. 1064).

Ratification involves full knowledge of all the facts. *DeVaughn* v. *McLeroy,* 82 *Ga.* 687, 700 (10 S. E. 211); *Dolvin* v. *Am. Harrow Co.,* 125 *Ga.* 699 (54 S. E. 706, 28 L. R. A. (N. S.) 785).

But when a person gains knowledge that he has received the benefit of a portion of the proceeds of an unauthorized sale, he should return or tender back such proceeds; and his failure to do so would be a ratification of the sale. Johnston *v.* Milwaukee etc. Co., 49 Neb. 68 (8) (68 N. W. 383); *Dolvin* v. *Am. Harrow Co.,* 125 *Ga.* 708 (supra).

The jury found that Will C. Warner and Mary Warner actually and knowingly received from their guardian portions of the proceeds of the administrator's sale of this land, with knowledge of

the irregularities in the sale. Under the above authorities they clearly ratified the sale by the administrator. But the situation of the Gachets is different. The jury found they did not actually and knowingly receive from their guardian any part of the proceeds of the sale of this land by the administrator. So they are not estopped on the ground that they knowingly received such proceeds. In their testimony they denied the receipt of any money from their guardian, who was their father, and who received such proceeds for them, although they receipted him as their guardian. They do not deny giving their guardian their receipts for their portions of these proceeds which he as their guardian received from the administrator for them. It is strongly urged by able counsel for the defendants, that the mere giving of such receipts, although the wards did not receive the actual coin of the realm, amounts to a ratification. It seems to us that they ought, on obtaining knowledge of the fact that their guardian had received these funds from the administrator for them, to have repudiated the transaction, and declined to deal with him in reference to these funds, if at the time of giving their receipts they knew of the irregularities in the administrator's sale; but it does not appear that at the time they gave their receipts they had knowledge of the irregularities in this sale.

2. Movants insist that the court erred in submitting to the jury question No. 12, which was as follows: " Did the plaintiffs or either of them, with knowledge or notice of any claim that they or either of them had, or had a right to claim, a right or interest in the land in dispute, or that the administrator's sale was voidable, stand by and allow Harvey Collins or B. H. Hill to put valuable, costly, and permanent improvements thereon under such circumstances as to make it inequitable for such plaintiff or plaintiffs to assert his or her claim therefor to any interest in the land? " The errors assigned are (*a*) because there can not be in law an estoppel as to title of land, and (*b*) because the court submitted this question to the jury without defining, in connection with its submission, the circumstances which would make it inequitable for the plaintiffs to assert their claims to any interest in this land. To be more specific as to this last ground of error, counsel for the plaintiffs insist " that the court gave no charge to the jury in connection with, and at the time of, explaining and submitting this question to the

jury, and that the court did not charge the jury what was meant in law by inequitable, and what the circumstances would be under which the jury should find that the plaintiffs or either of them could not assert his or her claim to the land." It is not complained that the court nowhere in its charge defined these circumstances, but movants say the court erred in not doing so at the time of, and in connection with, the submission of this question.

There is such a thing as equitable estoppel, applicable to land. One who silently stands by and permits another to purchase his property without disclosing his title is guilty of such a fraud as estops him from subsequently setting up such title against the purchaser. Civil Code, § 4419. The purchase by an administrator at his own sale of lands of his intestate is not void, but is only voidable at the election of the heirs of the intestate. They can affirm or disaffirm the sale. *Fleming* v. *Foran*, 12 *Ga.* 594; *Grubbs* v. *McGlawn*, 39 *Ga.* 672 (2); *Moore* v. *Carey*, 116 *Ga.* 28 (42 S. E. 258). This sale was likewise not void but voidable, because made at West Point without proper order. *Warner* v. *Hill*, 149 *Ga.* 464 (supra). If, under these circumstances, the heirs, with knowledge of their rights, stand by and allow the purchaser at such sale, or his assignee, to make valuable and expensive improvements on the land so bought, they will be estopped from asserting title thereto against the purchaser or his assigns. *Southern Marble Co.* v. *Darnell*, 94 *Ga.* 232 (21 S. E. 531); *Vandiver* v. *Byrd-Matthews Lumber Co.*, 146 *Ga.* 117 (90 S. E. 960). This court has held that " Beneficiaries of trust property sold under an invalid order of the chancellor, who for years have seen the purchasers erecting valuable improvements thereon without objection, are estopped from setting up title thereto." *Iverson* v. *Saulsbury*, 65 *Ga.* 724 (7).

We do not think the second ground of alleged error in this matter is sound. It would restrict the trial judge unnecessarily, when he instructs the jury to make special findings of the facts in an equity cause, and for this purpose submits to them certain questions, to require him, in submitting each question, to give in charge to the jury the law applicable to the issues involved in each case. It would not be error for the trial judge to pursue this course, and would probably be the better practice; but he can pursue the course of charging the jury fully the law of the case, and

then submit to them the questions which the jury must answer. There is no complaint as to the accuracy of the intructions given upon the subjects referred to in these questions, but only as to their relative location.

It is further urged that the language in which question 12 is couched is confusing and misleading, in that it puts too much stress upon the question whether either of the plaintiffs had allowed improvements to be made upon the property by the defendant, and too little stress was placed on the question whether their conduct in this respect was inequitable. We do not think this position sound.

3. But it is urged that the answer of the jury to question 6, when considered in connection with the charge of the court in reference thereto, and the answer to question 12 are so contradictory as to be unintelligible. Question 6 was: " Have the plaintiffs, or any one or more of them, failed to file suit to set aside the administrator's sale within a reasonable time therefor? " The jury answered that none of the plaintiffs had waited an unreasonable time. The jury answered question 12, which is set out above, in the affirmative. There is no conflict between these answers upon their faces and the faces of the questions to which they are replies. Standing alone, they are as clear as the sound of cathedral bells. Question 6 dealt with the delay of the plaintiffs in bringing suit to set aside the administrator's sale; and question 12 dealt with estoppel. Now, in view of the charge, are the answers contradictory? It is insisted that for the above reason they are. After propounding question 6, the court charged the jury upon the question whether the plaintiffs had unreasonably delayed in bringing their action to set aside the administrator's deed, this being the subject-matter dealt with in this question. The court then charged the jury upon the law applicable to estoppel, the subject-matter referred to in question 12. It is true that the court, after putting question 6, instructed the jury that in answering that question they must look to the evidence to see what had been the conduct of the plaintiffs since the sale of this property, and what laches they had committed, if any; and immediately following such instructions the court charged the jury to see what acts the plaintiffs had done to estop them from asserting title to the premises in dispute. The court did not tell the jury that their answer to

question 6 depended upon the solution of these separate and distinct issues. The two questions being plain and unambiguous, we do not think that the jury were misled by these instructions of the court; nor do we think that their answers to these questions are contradictory.

4. The plaintiffs excepted pendente lite to the decree in this case, on the grounds: (a) that it is unauthorized by the pleadings and verdict; (b) that the answers to questions 6 and 12 are so contradictory that no judgment could be rendered thereon in favor of the defendant B. H. Hill; (c) that the defendant B. H. Hill alleges in his answer that he is and was a tenant in common with the plaintiffs, and for this reason the plaintiffs would be barred from recovery under question 12; (d) that under the pleadings and evidence the plaintiffs were and are tenants in common with B. H. Hill, and a decree should have been rendered fixing the respective interests of the plaintiffs and defendants as tenants in common in this land; (e) that the decree was based upon the answer of the jury to question 12, and was not authorized by the pleadings and the verdict, including said question 12 and the answer thereto; (f) that a tenant in common can not be debarred from his right and interest in land by the action of a cotenant in putting improvements upon the joint property with the knowledge of the former; (g) that a decree should have been entered establishing the title of the plaintiffs Nicholas Gachet and Angelo Myers Gachet, and fixing their interests in the premises in dispute.

All of the above objections to the decree in this case, except the one raising the question whether the plaintiffs, if they were tenants in common with Hill, would be estopped by improvements placed on this land by him, have been disposed of in what has been said above, in dealing with the other questions raised in this case. One tenant in common would not be estopped from asserting title to his undivided interest in land by knowingly permitting another tenant in common, without objection, to erect valuable, permanent, and expensive improvements on the joint property during the existence of the joint tenancy, and before the former cotenant had been actually ousted by the latter, or until the latter tenant in common took exclusive possession of the joint property with notice to the other tenant in common of his adverse possession. Counsel for the plaintiffs assert that the present case falls within this rule.

They assert that the defendant Hill admitted that he is and was a tenant in common with the plaintiffs; and that for this reason the plaintiffs would not be barred from recovering by seeing valuable, permanent improvements placed on the land by him. Hill does not admit in his answer that he and the plaintiffs are tenants in common of the premises in dispute. In an amendment to his answer, filed July 27, 1920, he alleges that " Even if the claims made by the plaintiffs in this case are well founded, they have never held any higher interest in the lands in dispute than to be tenants in common along with Harvey Collins during the time he held possession of the lands, and with the defendant B. H. Hill since the time he purchased the same from Harvey Collins." In his original answer he specifically denies the title of the plaintiffs to any interest in the premises in dispute; and this denial covers their right or title as tenants in common. He purchased this land from Harvey Collins, the vendee of R. Wainright, who bought this land when sold by Harvey Collins as administrator of William E. Collins, under whom the plaintiffs claim as heirs at law. He immediately took possession of the premises, and held the same adversely to the plaintiffs. He claimed this land as sole owner. He actually ousted the plaintiffs therefrom. They must have had notice of his adverse possession. He placed valuable, permanent, and expensive improvements upon this land, not as tenant in common with plaintiffs, but as sole owner thereof. Under these circumstances the plaintiffs, having knowledge of their rights in the premises, and of the claim of title thereto by the defendant to this land, would be estopped from standing by and permitting the defendant to make these improvements without objection, and without asserting their claim or title to an interest in the premises. The jury found that the plaintiffs, with knowledge of their rights to an interest in the land in dispute, stood by and allowed the defendant, Hill, to put valuable, costly, and permanent improvements on these premises; and under these circumstances we are of the opinion that they would be estopped from thereafter asserting that the administrator's sale was void, and that they were entitled to an interest in these lands. Before permitting him to make these costly improvements on these premises, they should have notified him that they intended to repudiate the void or voidable administrator's sale, and to assert their right to their interest in this land.

*Judgment affirmed. All the Justices concur.*