Peacock *vs.* Terry.

No. 30.—LEWIS PEACOCK, plaintiff in error, *vs.* STEPHEN TERRY, defendant.

[1.] Where a bill charges a fraudulent sale and purchase under execution by defendant of complainant's property, proof of the admissions of complainant, that the sale was made in pursuance of an agreement between himself and defendant, is admissible.

[2.] Where the pleadings are made up and the cause on trial, and the evidence closed and the argument progressing, it is not competent to amend the bill but for special cause; and not where there is special cause shown, if the effect of the amendmet is to introduce a new cause of action.

[3.] No one can maintain an action for a wrong done, where he has consented or contributed to the act which occasions the loss. Hence, if a complainant seeks to recover for an act of defendant, which he charges to be fraudulent, it is not a fraud against him if it was done in pursuance of an agreement between himself and the defendant.

[4.] A complainant who participates with the defendant in an act by the defendant, which is in violation of the laws of the land, is not entitled to relief in a Court of Equity against the consequences of such act.

[5.] A party who goes into Equity to seek relief against a usurious contract, who has paid principal and legal interest of the debt, must aver in his bill that he has paid the *principal* and *legal interest*, and that if anything remains of these unpaid, that he is ready and willing, and now offers to pay whatever balance of *principal* and *legal interest* remains unpaid.

[6.] Facts alleged positively in a ·bill, are constructive admissions in favor of

the defendant, and need not be proven. The complainant cannot deny them, even if they are not true, but must recover according to the case he makes upon the record.

In Equity, in DeKalb Superior Court. Tried before Judge HILL.

This was a bill in Equity, filed by the defendant in error against the plaintiff in error, returnable to DeKalb Superior Court, alleging that in the year 1831, complainant was in need of money, and applied to the defendant, who loaned him, at different times, sums amounting in the aggregate to $502 46 cents, all at usurious interest; that complainant paid defendant, at different times, the aggregate sum of $459 63 cents; that he renewed his note yearly up to 1837, when he gave defendant his note for $807 65 cents, and to secure the same, gave the defendant a mortgage on lot of land No. 71, in the 14th district of originally Henry now DeKalb County.

The bill alleges, that in the year 1841, the said lot of land, together with another, known as lot No. 90, adjoining thereto, were levied upon by virtue of two executions against the complainant, when he entered into an agreement with the defendant, by which the defendant was to pay the plaintiffs in execution the amounts due them, and take them up and hold them against the complainant; that the defendant was to have the possession of both lots of land—on one of which there was a grist and saw-mill—with the exception of the dwelling-house, and fifty acres of land around it; that the use of the plantation and mills was to be a full compensation to the defendant for his interest on his mortgage debt and the executions; and that complainant was to have three years in which to redeem them, and upon failure of his redeeming them, the defendant was to take lands and mills at the price of $1600.

The bill further charges, that a short time after the contract, the defendant stated, that as the lands had been levied upon, that he preferred their being sold, to prevent other creditors from interfering with him, to which complainant consented. The lands accordingly were sold, and the defendant became the

purchaser—representing, at the time, that his object in having the land sold was to perfect titles.

The bill further charges, that complainant and defendant worked together in reparing the mills, for some months, when the defendant denied the contract and turned the complainant out of possession.

The bill prayed that the defendant may account to complainant concerning the usurious transactions charged; also, that the note and mortgage may be delivered up to be cancelled, provided it shall appear that the principal has been paid; also, that the sale of the lands by the Sheriff be declared void, and the deeds be delivered up to be cancelled, or else that defendant be decreed to perform, specifically, his several agreements with complainant.

The defendant, by his answer, denied, either in whole or in part, most of the allegations charged in the bill.

On the trial of the cause, counsel, in order to rebut the presumption of fraud, offered to prove by one Thomas J. Perkinson, "that complainant had told him that said lands were sold and purchased by the defendant, in pursuance of an agreement made between complainant and defendant, prior to said sale, by virtue of which, the defendant was to bid off the lands at the sale, and was to have possession of the mills and all the lands, except the dwelling-house and fifty acres around it; that the use of the lands and mills was to pay the defendant for the interest upon the mortgage debt and the executions which defendant had purchased against the complainant, and that the complainant was to have the right to redeem said premises at any time within three years, and upon his failure to do so, the defendant was to keep the property at the price of $1600." Which testimony was rejected by the Court, and counsel for defendant excepted.

Counsel for the defendant offered in evidence an affidavit made by the complainant before Thomas J. Perkinson, as a Justice of the Peace, in the year 1842, in which complainant had made similar statements to those sought to be proved by Perkinson. The Court rejected the affidavit, and counsel for the defendant excepted.

After the testimony had closed in the cause, and one counsel on either side had addressed the Jury, and the second counsel for the defendant was addressing them, he was interrupted by the Court, "who stated that he felt it to be his duty to state, that he did not think the complainant could recover with his bill in its then condition." Whereupon counsel for complainant moved the Court to amend the bill instanter, by striking out all that part of the same which contained anything in reference to the contract between the parties; and also by making material and substantial allegations in the bill in relation to the fraud charged to have been committed, at the sale of the lands by the Sheriff, by the defendant. Counsel for defendant objected to the motion. The Court overruled the objection, and allowed the amendments, and the defendant excepted.

Counsel for the defendant requested the Court to charge the Jury—

1st. That if they should believe, from the evidence, that the sale by the Sheriff was made in pursuance of an agreement made between the complainant and defendant, that it was not fraudulent as to complainant.

2d. That although they might believe that a fraud was practiced by defendant in said sale, yet, if they should believe that complainant was a participant in said fraud, that he had no right, in a Court of Equity, to be relieved against it.

3d. That complainants had no right to be relieved against the Sheriff's sale, by having the deed declared void, because he had made no offer in his bill to repay the defendant the money paid by him for said land, and had not tendered it or brought it into Court.

4th. That although they might be of opinion that the sale ought to be set aside, yet the complainant would have no right to recover damages for injuries done to the property, or for houses removed from the same, because he had set up no claim to such damages in his bill. All which the Court refused to charge, but in lieu of the third request did charge the Jury, "that if defendant had been guilty of a fraud, and had paid out his money for the land in pursuance of said fraudulent arrangement, that com-

plainant was under no obligation to pay him back his money, but that he might get it back the best way he could." The Court also charged the Jury, "that to entitle the complainant to relief against the payment of the usury, it was not incumbent on him to make a tender of the principal and lawful interest due on the money borrowed, or to bring the money into Court, provided it was a matter of calculation to ascertain whether the principal and interest had or had not been paid."

Counsel for defendant asked the Court to charge the Jury, "That the allegations and admissions in complainant's bill were evidence against him." To which the Court replied, "That this might be true in certain cases, but that in this case, the defendant had denied the allegations in the bill, and, therefore, they were not evidence for either party." The Court also charged the Jury, "that inasmuch as this bill had been amended by striking out all that part in relation to the contract between the parties, that they would have nothing to do with that part of the bill which had been stricken out, but would treat it as though it had never existed."

To all which charges and refusals to charge by the Court, counsel for defendant excepted, and upon these several exceptions has assigned error.

Judge WARNER, having been of counsel in the Court below, did not preside in this case.

CALHOUN & DABNEY, and EZZARD, for plaintiff in error.

MURPHEY and COLLIER, for defendant.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The evidence of the witness, Perkinson, was offered on the trial before the amendments were made. The question of its admissibility is, therefore, to be determined with reference to the case at that time made by the bill. It was proposed by the defendant below, to prove by the witness, Perkinson, the statements of the complainant, that the lands were sold, and bought

by the defendant at Sheriff's sale, in pursuance of an agreement made between the complainant and defendant prior to the sale, and as to what that agreement was. One of the main grounds relied upon in the bill for a decree is, that the defendant having purchased executions against the complainant, which had been levied upon his lands, and whilst holding a mortgage upon the lands, had fraudulently caused it to be brought to sale, and by false statements and fraudulent pretences, that the sale was only for the purpose of perfecting titles in him, bought the same at a merely nominal price. One of the prayers of the bill is, that this sale be set aside. Now, this evidence was offered to prove that the land was brought to sale and bought by the defendant, in pursuance of and in accordance with an agreement between the parties that it should be so bought and sold. The plaintiff's ground for setting aside the sale, is the fraud in the sale. If there was no fraud, he (complainant) cannot set it aside. If the sale was by his consent and agreement, there can be no fraud against him. The evidence goes to show that consent and agreement, and to deny the fraud. It was pertinent to the issue— it was to prove the agreement by the *admissions* of the complainant, and ought to have been admitted. Upon the same grounds, and for the same reasons, the affidavit of the complainant, made before the Justice, (Perkinson,) to the same effect, ought to have been admitted.

The amendments to this bill, made on the trial, were erroneously made. Two things are to be considered—

1st. The time at which the amendments were made.

2d. The character and effect of the amendments.

[2.] This cause, as appears from the record, had been some six or seven years in Court. The pleadings were finally perfected and the issues joined, and the cause submitted to a Jury. The evidence was all submitted; one of the counsel for the complainant had addressed the Jury; also, one of the counsel for the defendendant had addressed the Jury, and the second counsel for the defendant was in the act of addressing the Jury, when the Court interposed by saying, "That he felt it his duty to state, that he did not think the complainant could recover with

his bill in its then shape." Upon this, the counsel for complainant moved to withdraw the case from the Jury and continue it, with a view to amend, which motion the Court refused, but said he would allow the bill to be amended, *instanter*, if the defendant claimed no surprise; whereupon a motion was made to amend the bill, by striking out all that part of it which contained anything in reference to the contract between the parties, and by adding material averments in relation to the fraud charged to have been committed at the Sheriff's sale, without showing to the Court any reason why such amendments had not been before made. The defendant claiming no surprise, the motion was granted. I remark, here, that the fact that the defendant claimed no surprise, does not at all affect the question. He can be put upon claiming a surprise only in cases where the bill can be, according to law, amended. If, upon other grounds, these amendments were allowable, they were not in this case allowable, because they came too late. The rule as to amendments in Equity, when the pleadings are made up and the cause set down for a hearing, has been settled by this Court in several different cases. The bill, in such cases, is not amendable as matter of right. The motion to amend is addressed to the discretion of the Court, and that discretion will be exercised only upon some special cause shown. *Berry et al. vs. Mathews et al.* 7 *Ga. Rep.* 460. *Georgia R. R. & Bank. Co. vs. Milnor & Co.* 8 *Ga. Rep.* 316.

In this case the pleadings were made up—the cause had been in Court for years—the argument was in progress, and no cause for the amendment of any kind was shown. The parties pretended no cause. The Court seems to have allowed it, because, as the bill stood, the plaintiff could not recover. If that be a good cause, any case that is brought into Court may be amended, in an indefinite series, until the plaintiff is fortunate enough to make such a case as will, necessarily, force a recovery. The rights of the other party are to be protected. If such a rule of amendment, as that recognized by the Circuit Court in this case, obtains, I see no use for any of the rules of pleading whatever. The plaintiff has the game in his own hands, if there be no limit

to his right of amendment but his ability to recover on the case made in his bill.

But if special cause had been shown in this case, our judgment is, that the amendments would, in that event, have been improperly allowed. A good cause of action, defectively charged and set forth in the bill, may, under the circumstances of this case, upon special cause shown, be helped by amendment; but the effect of these amendments, in our opinion, is to change, essentially, the cause of the plaintiff's action—it is, in effect, the substitution of a different cause of action for that contained in the bill. It gives altogether a different cast to the bill. The bill sets out a loan of money to the plaintiff by defendant, at usurious interest, and a mortgage executed upon plaintiff's lands to secure it. It charges, that plaintiff's land being levied on by other judgment creditors, he proposed to defendant that he should take up these judgments, and he would give up into his possession his lands, with a small reservation, and that the use of the same should go to the payment of the interest on the mortgage debt, and that plaintiff should have the privilege of redeeming his lands within or at the end of three years, and if he should fail to redeem them, the defendant to have the lands in fee at and for $1600. To which the defendant assented, and the arrangement was accordingly carried into effect. Defendant took up the judgments, and went into possession of the lands. It farther charges, that the levies on his lands had not been dismissed, and a short time before the sale, the defendant proposed to him to permit the lands to go to sale under the incumbrance of his mortgage, and that he (defendant) buy them in, giving as a reason for this course, that they would not then be troubled with any other contracts of the complainant in future. To this proposition, the bill states, the complainant at first objected, but did finally yield his assent. A part of this latter understanding was, that defendant would still comply with the previous agreement as to the lands. The bill proceeds to charge, that it was agreed that the plaintiff and defendant should attend the sale; that defendant should call for plaintiff; that he did not do so, but went to the court-house another way, and before the plaintiff

got to Decatur, at an early period in the sale hours, caused the lands to be sold, and became himself the purchaser, for $37, and took the Sheriff's title therefor.   The bill charges the lands, so bought, to have been worth $4500, or other large sum, and that they were sacrificed in consequence of the representations made by the defendant; that the agreement between himself and the complainant made the sale merely formal.   The prayer is, that the defendant account with the plaintiff touching the usury; that the notes and mortgage be delivered up to be cancelled, if it should appear that the original principal is paid, &c.; that the sale by the Sheriff be declared void and the Sheriff's deeds be cancelled, and a general prayer.   Such is the bill.   The motion was to amend, " by striking out all that part of the bill which contained anything in relation to the contract between the parties, and to make material and substantial allegations in relation to the fraud charged against the defendant at the Sheriff's sale," which was done.   Now, the bill set forth two contracts between these parties—First, in relation to the delivery of possession of the lands, with the plaintiff's right to redeem, in consideration that defendant would take up the judgments, &c. and it admits that this contract was executed.   It also sets out an agreement, secondly, that defendant should buy the lands, just as he did buy them, at Sheriff's sale.   The amendment sweeps from the bill both these contracts or agreements, and retains all the allegations as to the usury, and all the allegations as to the fact of the sale, and the fraud touching that sale.   Nay, more: the plaintiff was not only allowed to take back all his averments and admissions touching these agreements, retaining just those which charged a fraudulent sale, and no more, but also to strengthen his charge of fraud by new allegations.

According to the bill as it stood, there could be no fraud in the sale, as against the plaintiff, because it was by agreement and consent of the plaintiff.   According to the bill as amended, the agreement abstracted, it was a naked fraud.   This statement is enough to show, without argument, that the amendments change the whole character of the bill, and vitally affect the rights of the defendant on the trial.   If amendments like these

are admissible, after the defendant has answered, replication filed, and the evidence not only prepared, but adduced, I repeat, I do not see how a defendant in Equity is benefited by any of the rules of pleading.

[3.] The counsel for the defendant requested the Court to instruct the Jury, " That if they believed, from the evidence, that the sale by the Sheriff was made in pursuance of an agreement made between the complainant and defendant, that it was not fraudulent as to the complainant," which he declined to do. This, we think, was error. The bill, as we have seen, charges a fraud in the sale, and that fraud is the ground of the demand that the sale be decreed to be null and void, and the Sheriff's deeds be delivered up to be cancelled. It was clearly competent for the defendant to disprove the allegations of fraud in the sale. This he might do by proving that the sale was in pursuance of, and according to an agreement between himself and the complainant. If such an agreement was proven, and the sale proven to have been according to it, it is very plain that the sale itself was no fraud upon the complainant; and so far as the complainant's right of recovery depended upon that fraud, it would be effectually denied by the proof. It is a well understood maxim of the Common Law, that no one can maintain an action for a wrong, where he has consented or contributed to the act which occasions the loss, *volenti non fit injuria.* It was just · this rule (for it is a *rule*) of the law, that the defendant requested might be given in charge to the Jury. *Plowd.* 501. 4 *Bing.* 628, 639, 640. *Browne's Legal Maxims*, 128, *marg. p.*

[4.] The defendant requested the Court to instruct the Jury, " That although they might believe that a fraud was practiced by the defendant in said sale, yet if they should believe that the complainant was a participant in said fraud, that he had no right, in a Court of Equity, to be relieved against said fraud." The Court refused so to instruct them, and this, also, we think was wrong. The idea of a man's participating in a fraud against himself, is absurd. Indeed, a willing assent to the act which is claimed to be a fraud, would divest it of that character, and, as we have seen, would deny to the party any right of action

thereon.   The fraud contemplated in this desired instruction, is a fraud upon third persons.   The agreement stated in the bill touching the sale of the lands, was, as the defendant expressed it, for the purpose of preventing any trouble in future from other contracts of the complainant.   In consequence of this object, thus stated for the agreement, it was claimed to be void, as against the rights of · creditors, and in contravention of the laws of the land.   Whether it was or not, depended upon all the facts before the Jury, and the law applicable to them; and how far this question might affect the complainant's right of recovery, taking the whole case together, we are not called upon to decide. The question for us is this—admitting that the Jury should believe that the sale under the agreement was a fraud, perpetrated by the defendant upon third persons, and that complainant was a participant in that fraud—is he entitled, in Equity, to relief from the consequences of the fraud to him?   We are very clear that he is not.   Complainants in Equity must come in, if at all, with clean hands.   Equity will not permit him to allege his own moral turpitude, or his own violation of the law, as a ground of redress.   If he is *in pari delicto,* the condition of the defendant is the best.

If a contract is in violation of a public law, or of the policy of the law, and is executed, Equity will leave the parties as they are.   It will not interfere to set the parties back where they were at the beginning.   If one has got the advantage, he will be allowed to retain it; and if the other applies to Chancery for relief, he will be turned away.   That is this case.   If this agreement was a fraud upon the rights of third persons, it being violative of a public law, and being consummated by the sale, the complainant being a party to it, and thereby a participant in the fraud, is not entitled to relief in Equity.   If, however, the contract or agreement remains unexecuted, and one party goes into Equity to enforce it, the *defendant* may defend against it upon the ground of its being against the law, not because the law regards his rights, but because of public policy.   This he may do, both at Law and in Equity.   Such, I believe, is the whole doctrine upon this subject.   See it discussed by this Court at large, in

*Adams vs. Barrett*, 5 *Geo. Rep.* 406, and in *Howell, adm'r, vs. Fountain and others*, 3 *Kelly*, 176.

The defendant requested the Court to instruct the Jury, " That although they might believe that the sale ought to be set aside, yet the complainant had no right to recover damages for injuries done to property, or for houses removed from the same, because he had set up no claim in his bill to such damages," which was refused. This refusal, we believe, also, to be error, and so adjudge it; and for the single reason stated in the request, to wit: because the complainant does not, in his bill, set up any claim to damages on account of injuries done to the property, or on account of the removal of houses from the premises.

Every material fact to which plaintiff expects to offer evidence ought to be stated. The complainant cannot, in his proof, go out of the allegations in his bill, and of course he is entitled to no decree for that which is not established by proof. We have looked carefully through the bill, and find no allegations under which he can prove damages done to the property, or damages for removing houses. No such injuries or removals are charged upon the defendant. The prayers, however general or numerous, cannot authorize a decree outside of the case which the bill makes. 1 *Bro. Ch. R.* 94.  6 *Johns. R.* 595.  3 *Swanst.* 472. 3 *P. Wms.* 276.  2 *Atk.* 96.  11 *Vesey,* 240.  *Story's Eq. Plead.* §28.

[5.] It is claimed that the Court erred in instructing the Jury, " That to entitle the complainant to relief against the payment of usury, it was not incumbent on him to make a tender of principal and lawful interest, due on the money borrowed, or to bring the money into Court, provided it was a matter of calculation to ascertain whether the principal and interest had or not been paid." We are not satisfied with the allegations in this bill, relative to the payment or offer to pay of the principal and lawful interest. A party to a usurious contract is not entitled to relief, in Equity, against the usurious interest, unless he pays, or offers to pay the principal and lawful interest. This is the rule. In cases where he has paid the whole of the principal and lawful interest, and distinctly avers that fact, and that he is ready and

willing to pay the balance, if any is due, he must be entitled to relief. But the complainant in this bill does not make clearly and distinctly these averments. He does not, with sufficient distinctness, offer to pay, or avow his readiness and willingness to pay whatever of principal and lawful interest remains unpaid, if any is found unpaid. In the amendment to the bill made in 1846, he says, " Your orator farther states, that he has paid to said Lewis Peacock all that is reasonably and legally due on the aforesaid note and mortgage, and that the same ought to be delivered to be cancelled, and further states, that if said debt is not fully paid, that your orator is ready and willing, and herewith offers to pay to said Lewis Peacock whatever balance is really and legally due him." The averment is, first, that he has paid all that is *reasonably and legally due* on the note and mortgage. There is no such rule in Equity, as that a party shall pay what is *reasonably* due, before he is entitled to relief. Who is to judge of what is *reasonably* due ? The complainant himself in the first instance. Upon that averment, it is clear that he is not entitled to relief. He farther says, that he has paid all that is reasonably and *legally* due. *Legally* leaves the matter still indefinite. What is due in the contract, *at Law*, is the principal only. There is a fixed rule on this subject in Equity, which is, that he must pay the *principal and lawful* interest, or tender it, and aver his willingness to pay it. He must come up to this rule. The other averment is obnoxious to the same exception. He says, if he has not fully paid the debt, he is ready and willing, and offers to pay whatever balance is *really and legally* due. Before, in our judgment, he is entitled to relief in this case, he must aver that he has paid the *principal and lawful* interest due on the note, and if *principal and lawful* interest are not paid, he is ready and willing, and offers to pay whatever balance of *principal and lawful* interest remains unpaid. Any requirement short of this would enable parties to evade the general rule. 1 *Fonb. Eq. b.* 1, *ch.* 1, §3, *note h.* 4 *Bro. Ch. R.* 436. 1 *Johns. Ch. R.* 367. 5 *Ib.* 142, '3, '4. *Story's Eq. Jurisp.* §301.

[6.] The Court was farther requested to instruct the Jury, " That the allegations and admissions in complainant's bill are

evidence against him," which he declined to do, but instead, instructed them, " That in this case the defendant had denied the allegations in the bill, and, therefore, they were no evidence for either party." The rule as to the force and effect of the allegations made by the complainant is this : facts alleged, positively, are constructive admissions in favor of the defendant, of the facts so alleged, and, therefore, need not be proven by other evidence. The plaintiff by introducing them in his bill, and making them a part of the record, precludes himself from disputing their truth, whether they be true or false. The allegations and admissions of the complainant's bill are, therefore, evidence against him. The Court does not controvert this general rule, but holds that, in this case, they are not evidence for either party, because denied by the defendant. However, it may be true that such a denial, by the defendant, would seem to neutralize the effect of the allegations and admissions, still it is true that the complainant is bound by them—he cannot dispute their truth—nor can he prove and recover but according to them—they being taken as true. He cannot prove and recover according to a case inconsistent with the case he has made upon the record, and in this light they are to be regarded by the Jury. 2 *Daniel's Ch. Prac.* 974. *Gresley's Eq. Evid. Am. edit.* 8, 9.

The Court instructed the Jury, that those parts of the bill stricken out by the amendment, were not to be regarded by them. That was proper as the case stood after the amendments. Believing, as we do, that the amendments were improperly made, the bill is to be regarded as though no amendments had been made.

Let the judgment be reversed.