25133, 25134. BLOODWORTH, Executor, et al. v. BLOODWORTH, by Next Friend, et al.; and vice versa.

ARGUED MAY 12, 1969—DECIDED JULY 10, 1969.

*Maurice C. Thomas, Jones, Cork, Miller & Benton, Wallace Miller, Jr.,* for appellants.

*Dickens & Hall, G. Lee Dickens,* for appellees.

GRICE, Justice. This review involves rulings in a minority stockholders' suit complaining of sales of all of the corporation's products to a partnership.

The plaintiff Mrs. Florabelle C. Middlebrooks is the widow of J. Logan Bloodworth and has remarried. The other plaintiffs are their children.

Defendants are G. Albert Bloodworth and G. Ernest Bloodworth, brothers of the deceased J. Logan Bloodworth who are sued individually and as executors and trustees under his will and as trustees under a trust created by him; the partnership Cherokee Products Company; the corporation Sunrise Products, Inc.; and Jesse Gordon Moore and Maurice C. Thomas, successor executors and trustees under Logan Bloodworth's will.

The suit, filed in the Superior Court of Baldwin County, asserts that the sales complained of are for the personal gain of the two brothers and their mother, who comprise the partnership. The action seeks an accounting, damages and injunctive relief from the sales. It also seeks disqualification of the brothers as executors and trustees and disqualification of Moore and Thomas as successor executors and trustees.

The complaint, as amended, insofar as necessary to recite here, makes the allegations which follow.

The majority of the outstanding 1,250 shares of stock of Sunrise is owned by the two brothers, their mother, wives and children, and the remaining minority, 357 1/7 shares, is owned by the plaintiffs. The brothers, as executors and trustees under Logan's will and trust, control 238 1/7 shares of the plaintiffs' stock.

The Board of Directors since J. Logan Bloodworth's death on April 12, 1965, has been the two brothers Albert and Ernest, their mother, their wives and the plaintiff widow. Its officers since that date have been Albert, president; Ernest, vice president; and their mother, secretary and treasurer.

Sunrise, a Florida corporation, owns and operates a cannery at Fort Pierce, Florida. On April 12, 1965, it had in inventory a

stated amount of tomatoes and beans which it had processed and canned, and from that date to June 30, 1967, it processed and canned additional specified quantities.

These products were sold to the partnership Cherokee in separate sales on open account, without interest, for a named price. Such sales were negotiated and consummated for Sunrise by Albert and Ernest and for Cherokee by the same persons. They fixed the consideration by adding 1% to the cost of production. Cherokee resold these goods to third persons for amounts unknown to the plaintiffs but believed to be for a profit of $500,000 to Cherokee.

At all times since April 12, 1965, Albert and Ernest have been two of the three partners of Cherokee. The plaintiffs are not partners therein.

Plaintiffs, on April 27, 1967, complained of these sales by letters to the directors and stockholders. On July 1, 1967, at meetings of the stockholders and of the directors, the plaintiff widow unsuccessfully sought adoption of resolutions changing this arrangement. Contrary resolutions continuing the cost plus 1% arrangement between Sunrise and Cherokee were adopted with all voting in favor except her.

Since then Sunrise has processed and canned additional products, the amounts being unknown to plaintiffs. These have been sold to Cherokee on open account without interest, such sales being negotiated and consummated for Sunrise and for Cherokee by Albert and Ernest for a consideration of cost plus 1%. They are being resold by Cherokee at a substantial profit over the amount it paid to Sunrise.

The defendants intend to continue selling to Cherokee in this manner unless restrained and enjoined.

As shown by the above facts, Sunrise refuses to enforce rights which may properly be asserted by it against Albert, Ernest and Cherokee.

The defendants have wilfully caused these sales to be made pursuant to a scheme to divert from Sunrise to Cherokee profits rightfully belonging to Sunrise, with the intent and effect of depriving plaintiffs of the part of such profits to which they are justly entitled due to the fact that the plaintiff widow and the

estate and trust of J. Logan Bloodworth own 357 1/7 shares of the stock of Sunrise.

By reason of the foregoing facts Albert, Ernest and Cherokee owe Sunrise the total amount Cherokee has received from resales plus the fair market value of goods purchased by Cherokee from Sunrise since April 12, 1965, but not resold, less payments Cherokee has made to Sunrise on the purchase price. Albert, Ernest and Cherokee are also liable to Sunrise for interest on the above and are liable to Sunrise and to the plaintiffs for punitive damages and expenses of litigation.

Also, as shown by these facts, Albert and Ernest have exercised their fiduciary powers in furtherance of their own personal interest at the expense of the beneficiaries of the trust and will. For this reason they are not fit and proper persons to act as executors and trustees and are disqualified.

Jesse Gordon Moore, named in Logan's will as successor executor and trustee, is a resident of Jones County. He is an employee of Cherokee and a brother in law of Albert, has actively participated as Cherokee's agent in the sales complained of, is taking the side of Cherokee and its partners in the matters complained of, and is therefore disqualified from acting as executor and trustee.

Maurice C. Thomas, also named as successor executor and trustee, is a resident of Bibb County. He is the attorney for Albert, Ernest and Cherokee, has been actively representing them in the matters involved in this action, and is therefore disqualified.

The prayers sought, in substance, the following relief: interlocutory and permanent injunction prohibiting Sunrise from selling to Cherokee, Albert or Ernest, or any partnership or corporation in which they have any interest, and prohibiting them from purchasing from Sunrise; accounting by the defendants for all sales by Sunrise to Cherokee since April 12, 1965, and all payments by Cherokee to Sunrise on these purchases; accounting by Albert, Ernest and Cherokee of all sales by Cherokee of goods purchased from Sunrise since April 12, 1965, and of all goods bought from Sunrise since that date and not yet sold; removal of Albert and Ernest as executors and trustees as aforesaid and

appointment of others; disqualification of Moore and Thomas as successor executors and trustees and appointment of others; monetary judgment in favor of Sunrise and the plaintiffs against Albert, Ernest and Cherokee for a named amount, or for actual and punitive damages, and expenses of litigation; judgment assessing against Sunrise, each of the plaintiffs, and the executors and trustees, in proportion to the amounts that each may recover in this action, all expenses of litigation which the plaintiffs may incur; and general relief.

Separate answers were filed to this complaint by Albert and Ernest individually and as executors and trustees, Sunrise, Cherokee, Moore and Thomas. All of the answers admitted allegations relating to identity of the parties, ownership of stock in Sunrise, its officers and directors, the general nature of its business and that of Cherokee, the will and trusts above referred to, and other matters not in dispute here. All such answers denied the essential allegations of the complaint, and averred that the arrangement and agreement providing for the sales complained of is fair, equitable and just.

The answers of all defendants except Moore and Thomas set forth the defense of estoppel by acquiescence of the plaintiffs in the continuing arrangement for the sales. Upon motion these averments as to estoppel were ordered stricken.

Also ordered stricken were the references in the answers of all defendants to their offer to sell their Sunrise stock to the plaintiffs and their offer to purchase from the plaintiffs their stock, and of their refusal.

The answers of Sunrise, Moore and Thomas contain jurisdictional defenses. Also, these defendants moved to dismiss the complaint for lack of jurisdiction as to them and moved for summary judgment based upon the same ground. Both of these motions were denied.

Each side made a motion for summary judgment. These were denied, except the grounds of plaintiffs' motion relating to jurisdiction of Sunrise, Moore and Thomas, which was granted.

A hearing for interlocutory injunction was held, at which voluminous oral and documentary evidence was submitted by both sides in support of their diverse positions. Thereafter an inter-

locutory injunction was granted prohibiting the defendants from carrying out the sales arrangement, but it was superseded pending the appeal and damages were limited to those actually· sustained.

During the interval of approximately 10 or 11 months between the interlocutory hearing and issuance of the order thereon, numerous discovery proceedings occurred. The only discovery ruling at issue here is the trial court's overruling of the defendants' objections to a motion of the plaintiffs for discovery and production of documents, upon condition that the plaintiffs deposit a certain sum of money to defray the cost.

No rulings were made on the prayers seeking removal of the executors and trustees or disqualification of their successors.

The appeal (case number 25133) is by the defendants in the trial court. They enumerate as error: (1) the grant of the interlocutory injunction; (2) the striking of certain portions of their answers; (3) denial of their motions for summary judgment; and (4) grant of the portion of plaintiffs' motion for summary judgment relating to jurisdiction as to Sunrise, Moore and Thomas, and denial of those defendants' motions to dismiss the complaint as to them for lack of jurisdiction.

The cross appeal (case number 25134) is by the plaintiffs in the trial court. They enumerate as error: (1) superseding of the interlocutory injunction during appeal and limiting the defendants' liability during appeal to actual damages; (2) denial of plaintiffs' motion for summary judgment except as to jurisdiction of Sunrise, Moore and Thomas; (3) refusing to strike portions of the defendants' answers; and (4) conditioning the overruling of defendants' objections to plaintiffs' motion for discovery.

■ We deal first with the issue as to the court's jurisdiction of Sunrise, Moore and Thomas, made by their motions to dismiss and for summary judgment and by the plaintiffs' motion for summary judgment.

(a) The rulings on the foregoing motions of Sunrise were not argued in this court orally or by brief. Hence they are deemed to have been waived and will not be considered.

(b) However, those of Moore and Thomas are insisted upon, and we treat them together since their positions are the same.

Under the Constitution and laws of this state all suits in equity shall be filed in the county of the residence of one of the defendants against whom substantial relief is prayed. Constitution, Art. VI, Sec. XIV, Par. III (*Code Ann.* § 2-4903) ; *Code* § 3-202.

The above rule "has been uniformly construed to mean that in order to join a nonresident in such a suit, substantial equitable relief must be common to him and the resident defendant." *I. Perlis & Sons v. National Surety Corp.*, 218 Ga. 667, 668 (129 SE2d 915). See also, *Rylee v. Abernathy*, 210 Ga. 673 (1) (82 SE2d 220). There must be some matter in the suit which is common to all. *Blaisdell v. Bohr*, 68 Ga. 56 (2) ; *Cowan v. Nicholson*, 158 Ga. 425 (1) (123 SE 681) ; *Hyde v. Atlanta Woolen Mills Corp.*, 204 Ga. 450 (4) (50 SE2d 52). Also, the Civil Practice Act provides: "All persons may be joined in one action as defendants if there is asserted against them, jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact *common to all of them* will arise in the action." Ga. L. 1966, pp. 609, 631 (*Code Ann.* § 81A-120 (a)). (Emphasis supplied.)

The defendants Moore and Thomas are nonresidents of the county where the suit was filed, and it appears from the allegations and prayers that the only relief sought against them is disqualification as successor executors and trustees. While removal of the defendants Albert and Ernest as executors and trustees is sought, no such issue is involved as to Cherokee, the other resident defendant, or as to Sunrise.

Under these circumstances no relief common to all of the defendants is sought. It follows that the superior court of the county where the suit was filed lacks jurisdiction over the defendants Moore and Thomas.

Thus, it is unnecessary to determine whether the relief sought against these two defendants is substantial equitable relief.

Therefore, the motions of these two defendants were erroneously denied, and that of the plaintiffs was improperly granted.

■ We next deal with the enumerations of error by the de-

■

fendants involving rulings made upon the plaintiffs' motions to strike portions of their answers.

(a) The defendants enumerated as error the striking from their answers of their offer of sale or purchase of the Sunrise stock. However, they have not argued this feature in this court either orally or by brief. Hence it will be deemed to have been waived and will not be dealt with here.

(b) The other portions stricken were embodied in the answers of all defendants except Moore and Thomas. Those portions, which sought to set up claims of estoppel against the plaintiffs, were substantially as follows.

The sales agreement of cost plus 1%, referred to above, was entered into in 1954, or prior thereto, by Sunrise through Logan, Albert and Ernest as its officers, and by Cherokee through Logan, Albert, Ernest, and their mother as partners thereof.

Annually, without interruption until Logan's death on April 12, 1965, such sales agreement was continued and acquiesced in by Sunrise and Cherokee by the officers and stockholders of the former and by the partners of the latter.

The plaintiff widow, owning and controlling 119 shares of Sunrise stock, knew of and acquiesced in said agreement and its application and consummation for over 10 years, accepted the results thereof, and is estopped from setting up or claiming any alleged invalidity or impropriety thereof.

Likewise, all of the plaintiffs having a beneficial interest in the 8 1/7 shares of stock in Logan's estate are estopped from setting up or claiming any invalidity or impropriety as to said agreement, because Logan, their predecessor in title, participated in formulating it on behalf of Sunrise and Cherokee, acquiesced in its application and consummation, and accepted the results of it for over 10 years.

Likewise, the plaintiff children of Logan, as beneficiaries of the 230 shares of stock in trust, are estopped from setting up or claiming any invalidity or impropriety as to said sales agreement, because Logan, the trustor therein and their predecessor in title, participated in formulating the agreement, was a party to accepting it on behalf of Sunrise and Cherokee, acquiesced in its application and consummation, and accepted its results for over 10 years, individually and as trustee.

Three separate claims of estoppel are thus sought to be established.

(1) The foundation of estoppel of the plaintiff widow is her long and knowingful participation and acquiescence in the sales arrangement of which she now complains.

The rule is firmly established that ". . . where stockholders in a corporation participate in the performance of an act, or acquiesce in and ratify the same, they are estopped to complain thereof in equity." *Chalverus v. Wilson Mfg. Co.*, 212 Ga. 612 (4) (94 SE2d 736). See also, *Alexander v. Searcy*, 81 Ga. 536, 545 (8 SE 630, 12 ASR 337); *Mathews v. Fort Valley Cotton Mills*, 179 Ga. 580, 587 (176 SE 505) (two Justices concurring specially).

According to these allegations this plaintiff's conduct brings her within the application of this rule. For many years she acquiesced in and accepted the results of the same arrangement of which she now complains, sales by Sunrise of its products to Cherokee at cost of production plus 1%. The only difference is that the present Cherokee is a different partnership, for upon her husband's death, his share in it was purchased by Albert and Ernest and a new partnership commenced. However, this was contemplated and was accomplished on a "plainly spelled out basis," provided by the partnership agreement and sanctioned by this court in *Bloodworth v. Bloodworth*, 224 Ga. 717 (164 SE2d 823). And it is significant that notwithstanding the partnership change, the arrangement remained the same.

Therefore, these allegations of the defendants' answers are sufficient to raise an issue as to estoppel by her, and thus create a question of fact for a jury's determination.

(2) The foundation of the claim of estoppel against all of the plaintiffs claiming under Logan's will is that he, their predecessor in title, participated and acquiesced in the agreement for the sales, thus estopping them to complain of it.

This situation calls for application of the equally well known principle that "Stockholders who have acquired their shares and their interest in the corporation from the alleged wrongdoers, and through the prior mismanagement, have no standing to complain thereof." *Mathews v. Fort Valley Cotton Mills*, 179 Ga. 580, 587, supra.

For the above and those reasons set forth in the preceding subdivision, it was error to strike the allegations pertaining to this claim of estoppel.

(3) The gravamen of the claim of estoppel against Logan's three children as beneficiaries of the inter vivos trust, is that he, as trustor and their predecessor in title, participated in the agreement, as aforesaid.

However, when the children acquired their stock interest under this trust in 1949, Logan had not done any act chargeable to them as an estoppel. The sales agreement now complained of did not commence until about 1954.

For this reason, the allegations of estoppel against the children as beneficiaries of the trust, as a matter of law, do not state a defense. Hence, the striking of the allegations relating to this feature was correct.

■ A substantial issue is raised from the enumerations of the cross appellants, plaintiffs in the trial court, urging that it was error to deny their motions to strike other portions of the answers of the defendants. Those portions, most of which are common to all defendants, in substance, follow.

The sales by Sunrise to Cherokee were pursuant to an agreement entered into between them several years prior to Logan's death. It was proposed by him and agreed to by the corporation and the other partners of the partnership. The consideration was fixed and determined according to the agreement, which provided for payment by Cherokee to Sunrise of all costs of production and maintenance, and fixed operating expenses of every kind, except income taxes, plus 1%.

Sales by Sunrise to Cherokee since June 30, 1967, were pursuant to the foregoing arrangement, which was confirmed, ratified and continued by resolutions of the stockholders and directors of Sunrise on July 1, 1967.

Continuation of said sales will be pursuant to such agreement and ratification.

The said arrangement is fair, just and equitable, particularly insofar as Sunrise is concerned. The 1% is paid to it by Cherokee regardless of the profit or loss to Cherokee on the resale of such merchandise.

For the years 1962 through 1967 Cherokee paid to Sunrise the 1% in the amounts which follow, and realized the profit and loss on sale of the merchandise so purchased, also as follows:

| Year | Paid to Sunrise by Cherokee | Profit/Loss of Cherokee on Sale of Merchandise |
|------|------|------|
| 1962 | $ 7,453.03 | $28,978.82 Loss |
| 1963 | 6,374.64 | 20,689.91 Loss |
| 1964 | 7,239.00 | 48,322.86 Loss |
| 1965 | 8,224.00 | 15,738.30 Profit |
| 1966 | 8,580.79 | 43,522.00 Profit |
| 1967 | 9,474.62 | 80,117.48 Profit |
| Total: | $47,346.16 Profit | $41,416.19 Profit |

Logan, Albert, Ernest and their mother had been partners in Cherokee for approximately 25 years prior to Logan's death.

(a) As to each of the foregoing averments, plaintiffs urge in their motions that they do not state any defense to the complaint and are immaterial to any issue.

This suit was filed prior to the effective date of the new Corporations Code. Ga. L. 1968, p. 565 (*Code Ann. Title* 22).

It should be borne in mind that this is a minority stockholders' suit complaining of acts of the corporation and its officers. To succeed, the suit must conform to well established requirements.

Specifically what must be shown is stated in former *Code* § 22-711, as follows: "A minority stockholder may proceed in equity in behalf of himself and other stockholders for fraud or acts ultra vires against a corporation, its officers and those participating therein, when he and they are injured thereby. But there must be shown—1. Some action or threatened action of the directors beyond the charter powers; or 2. Such a fraudulent transaction completed or threatened, among themselves or stockholders or others, as will result in serious injury to the company or other stockholders; or 3. That a majority of the directors are acting in their own interest in a manner destructive of the company, or of the rights of the other stockholders; or 4. That the majority stockholders are oppressively and illegally pursuing, in the name of the corporation, a course in violation of the rights of the stockholders, which can only be restrained by a court of

equity; and it must also appear—5. That petitioner has acted promptly; that he made an earnest effort to obtain redress at the hands of the directors and stockholders, or why it could not be done, or it was not reasonable to require it; and 6. That petitioner was a stockholder at the time of the transaction of which he complains, or that his shares have devolved on him since by operation of law."

*Code* § 22-710 formerly provided that "So long as the majority of stockholders confine themselves within the charter powers, a court of equity will require a strong case of mismanagement or fraud before it will interfere with the internal management of affairs of a corporation."

As to fraud, our *Code*, § 37-702, states: "Fraud may be actual or constructive. Actual fraud consists in any kind of artifice by which another is deceived. Constructive fraud consists in any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another. The former implies moral guilt; the latter may be consistent with innocence."

Under these Code sections, the validity of the agreement depends upon whether the facts surrounding it show that it was entered into in good faith and is fair. It is not void per se merely because it was entered into on behalf of Sunrise by Albert and Ernest, two of its officers and directors, and on behalf of Cherokee likewise by Albert and Ernest, two of its partners. Such a holding would unduly restrict the power of a corporation to enter into contracts merely because of the relationship of the parties and regardless of whether such contracts were beneficial to the corporation. See in this connection, former *Code* § 22-708; *Krenson v. Jos. N. Neel Co.*, 219 Ga. 487 (134 SE2d 43) (one Justice disqualified).

The defendants' allegations sought to be stricken recite that the agreement is fair, equitable and just, particularly as to Sunrise, and set forth such matters as the initial making of the agreement, its ratification and continuation, the guaranteed profit to Sunrise, and the profits of Sunrise and profits and losses of Cherokee both before and since Logan's death. Thus, these allegations are material to the factual issue of good faith and fairness.

A different conclusion is not required by *Mayor &c. of Macon v. Huff,* 60 Ga. 221, which is distinguishable on its facts. There, the mayor contracted with the council to lease a city park and, for an annual sum paid him, agreed to fence, drain and keep it in repair for that period. This court held that no matter how fair the contract was, it was forbidden by public policy since it would be his official duty as mayor to oversee his own performance as contractor, of this executory contract.

The court correctly denied the motions to strike the foregoing averments from the answers of the defendants.

(b) The trial court was also correct in denying plaintiffs' motions to strike from the defendants' answers their allegations pertaining to ratification of the agreement providing the arrangement for the sales from Sunrise to Cherokee. Whether this agreement could be ratified by the majority at the stockholders' and directors' meetings depends upon whether it is valid or violates *Code* § 37-702, and former *Code* §§ 22-710 and 22-711, supra, relating to fraud and the rights of minority stockholders. This we held in the immediately preceding subdivision to be an issue of fact.

■ The cross appellants, plaintiffs in the trial court, contend that they were entitled to summary judgment for all relief prayed except punitive damages. They insist that the pleadings, answers to interrogatories, responses to requests for admissions, and evidence at the interlocutory hearing show that there was no genuine issue as to any material fact and they were entitled to summary judgment in their favor as a matter of law.

This contention, as we evaluate it, is not meritorious.

The showing just referred to was conflicting as to the validity of the agreement. The facts and circumstances relating to it, including but not exclusive of such matters as its inception and performance, good faith, fairness, the guaranteed profit to Sunrise, profits and losses as to Cherokee, similar sales during Logan's lifetime and the financial interfusion of Sunrise and Cherokee, alleged in the answers and shown by the documentary and oral evidence, authorize inferences which raise a genuine issue of material fact as to the validity of the agreement to be resolved by a jury upon the trial.

■ Likewise, the appellants, the defendants in the trial court, were not entitled to summary judgment in their favor. The showing above referred to, including such features as the relationship of the contracting parties, the 1% plus cost consideration for products sold by Sunrise to Cherokee, the reversal of the trend from Cherokee's losses to profits as of 1965 when Logan died, the statistics as to Sunrise's return on its investment, permit inferences which create an issue of fact for a jury at the trial, and manifest the correctness of the denial of this motion.

■ In view of the conflicts referred to in Divisions 4 and 5, supra, as to the validity of the agreement, the grant of the temporary injunction was not an abuse of discretion. The evidence did not demand a finding that the cross appellants, plaintiffs below, had failed to do equity and were barred under the unclean hands maxim of *Code* § 37-104.

■ The trial court did not err, as cross appellants contend, in finding that issuance of an immediate and qualified injunction would work a hardship on the plaintiffs, Sunrise and Cherokee and in superseding the injunction pending the appeal and limiting the defendants' liability during the appeal to actual damages. This determination was within the discretion of the court.

■ Nor was it error, as contended by cross appellants, to condition the denial of the defendants' objections to plaintiffs' motion for discovery and production of documents upon a cost deposit by the plaintiffs. It was shown that this amount was required to obtain the information within the prescribed time since this was during the busy season. No abuse of discretion appears.

*Judgments affirmed on main appeal except as to jurisdiction of defendants Moore and Thomas, which is reversed, and as to estoppel, which is reversed in part and affirmed in part. Judgment affirmed on cross appeal. All the Justices concur.*