76129. KAHN et al. v. COLUMBUS MILLS, INC. et al.
(371 SE2d 908)

SOGNIER, Judge.

Ruth Kahn, Donald Kahn, Alan Kahn and Thomas Kahn brought suit against Columbus Mills, Inc., and several individuals, including George Swift, who served on the board of directors of Columbus Mills, seeking damages for breach of fiduciary duties owed them by the directors in regard to a proposal made by Swift and entertained by the other directors to merge Columbus Mills, a publicly

owned corporation, with Carpet Mill Store, Inc., a corporation privately owned by Swift and members of his family, including his daughter, defendant Joan Swift Conger. The Kahns also alleged that Swift was using his position as the beneficial owner of 33.8 percent of Columbus Mills stock to purchase Columbus Mills "for his own purposes" and to "enrich himself at the expense of and to the detriment of [Columbus Mills'] public shareholders." The Kahns asserted in their complaint that the proposed per share offer made by Carpet Mill Store and entertained by Columbus Mills' directors unfairly undervalued the stock in issue and was "so grossly unfair as to constitute a separate and aggravated breach of fiduciary duty." No certification was obtained for that part of the Kahns' complaint seeking to initiate a class action to enjoin the proposed merger and upon the trial court's denial of the application for injunctive relief, the merger took place and Columbus Mills ceased to exist as a separate entity. OCGA § 14-2-216 (b) (2). Subsequently, the Kahns turned over their shares for the $43 per share price offered pursuant to the merger by the surviving corporation, Carpet Mill Store. The trial court granted the defendants' motion for summary judgment and the Kahns appeal.

Appellants contend the trial court erred by granting summary judgment to appellees because questions of fact exist regarding appellees' alleged breach of their fiduciary duties. Appellees argue that appellants, by surrendering their shares in exchange for the sell-out value offered by Carpet Mill Store, either released their cause of action or are estopped to assert it.

(1) We agree with appellants that the trial court erred by granting summary judgment to appellees insofar as the judgment was based on the issue of release. The document appellants executed when they surrendered their shares provided: "In connection with the merger . . . of Columbus Mills, Inc., a Georgia corporation . . . , with and into Carpet Mill Store, Inc., a Georgia corporation (the "Purchaser"), . . . the undersigned [appellants] hereby surrenders for cancellation the above-described shares. . . . The undersigned hereby represents and warrants that the undersigned has full power and authority to sell, assign and transfer the Shares surrendered hereby and that the Purchaser will acquire good and unencumbered title thereto, free and clear of all liens, restrictions, charges and encumbrances and the same will not be subject to any adverse claim. . . ."

A release is subject to the same rules of construction as govern ordinary contracts in writing. See *Thomaston v. Fort Wayne Pools*, 181 Ga. App. 541 (1) (352 SE2d 794) (1987). " ' "The language of the contract should be construed in its entirety, and should receive a reasonable construction, and not be extended beyond what is fairly within its terms. Where the language is unambiguous, and but one reasonable construction of the contract is possible, the court must ex-

pound it as made." [Cit.]' [Cit.]" *Cutledge v. Aetna Life Ins. Co.*, 53 Ga. App. 473, 475 (186 SE 208) (1936). Construing the document in accordance with these principles, it appears that appellants delivered to Carpet Mill Store their shares in Columbus Mills free and clear of claims *against the stock* with no claims attached to the stock against the successor corporation. No reference is made to the individual director appellees; nothing in the document addresses appellants' suit for damages as a result of these appellees' alleged breach of their fiduciary duties; no language in the letter purports to constitute a release of the claims asserted by appellants in their complaint. Under no reasonable construction of the document can it be held that any of the parties intended it to be construed as a release of appellants' lawsuit or a surrender by appellants of their cause of action against appellees. Thus, we cannot agree with appellees that this document contained a release of appellants' claims against appellees for breach of their fiduciary duties as directors of Columbus Mills. Compare *Lokas v. Greer*, 169 Ga. App. 537 (313 SE2d 725) (1984); *Bishop v. Intl. Paper Co.*, 173 Ga. App. 34 (325 SE2d 870) (1984).

(2) Extensive reference is made by both parties in their briefs before this court to OCGA § 14-2-251, which sets forth the procedure whereby a stockholder who is dissatisfied with certain corporate actions (as enumerated in OCGA § 14-2-250) can exercise his right to dissent and obtain relief by recovering the fair value of his shares. The record is uncontroverted that appellants did not enforce their dissenter's rights pursuant to this Code section. However, OCGA § 14-2-251 (j) provides: "The enforcement by a shareholder of his right to receive payment for his shares in the manner provided in this Code section shall exclude the enforcement by such shareholder of any other right to which he might otherwise be entitled by virtue of share ownership, except [in two situations not applicable in the case sub judice.] *If a shareholder does not enforce his dissenter's rights pursuant to this Code section . . . , nothing in this Code section shall be construed as barring him from bringing or maintaining an appropriate action to obtain relief on the ground that the corporate action in question will be or is unlawful or fraudulent as to him.*" (Emphasis supplied.) Construing the clear and unambiguous language of subsection (j), see generally *Mackey v. Lanier Collection Agency*, 178 Ga. App. 467, 468-469 (1) (343 SE2d 492) (1986); *Georgia Institute of Technology v. Gore*, 167 Ga. App. 359-360 (306 SE2d 338) (1983), in the absence of any enforcement by appellants of their dissenter's rights pursuant to OCGA § 14-2-251, the exclusiveness of the statutory remedy does not bar appellants from following the course of action they have selected in order to obtain the relief to which they allege they are entitled as a result of the claimed unlawful acts in issue here. See Comment (10), OCGA § 14-2-251.

(3) Appellees argue that notwithstanding the continued viability of a cause of action for breach of fiduciary duty outside of OCGA § 14-2-251, appellants' acceptance of the sell-out offer for their Columbus Mills stock rendered otherwise worthless by the merger estops appellants from asserting their cause of action against the directors of Columbus Mills. Appellees cite this court to cases referencing a long established equitable doctrine in Georgia law to the effect that a party who has accepted the benefits of a corporate act may not thereafter continue to challenge the validity of that act. This doctrine has been applied in cases in which the complaining party personally participated in the corporate act complained of, see *Chalverus v. Wilson Mfg. Co.*, 212 Ga. 612, 613 (4) (94 SE2d 736) (1956) (acting president); *Claire v. Rue de Paris, Inc.*, 239 Ga. 191, 194 (236 SE2d 272) (1977) (director); *Medlin v. Carpenter*, 174 Ga. App. 50, 52 (2) (329 SE2d 159) (1985) (president and member of board of directors); or where the complaining party knew fully of the decision at the time of its making, registered no complaint, acquiesced in the decision, then years later brought suit. See *Alexander v. Searcy*, 81 Ga. 536, 543-544 (8 SE 630) (1888) (7 or 15 year acquiescence); *Bloodworth v. Bloodworth*, 225 Ga. 379, 386-387 (169 SE2d 150) (1969) (10 year acquiescence); *Comolli v. Comolli Granite Co.*, 233 Ga. 461 (1) (211 SE2d 750) (1975) (acquiesced over 10 years).

In view of the facts in the case sub judice, we are not persuaded that the equitable doctrine above is applicable here. First, appellants were not directors or officers of Columbus Mills and had no influence on the proposed merger or its outcome. Second, at the time the merger was proposed, appellants did not remain silent and accept the $43 per share offer and then institute suit years after the fact. Rather, the evidence of record indicates that appellants, minority shareholders, consistently opposed the merger and instituted suit in an attempt to enjoin it as well as to call into issue the alleged breach of fiduciary duties which gave rise to the proposed merger. Only after appellants' efforts failed and Columbus Mills merged into Carpet Mill Store despite their opposition and in the face of their continuing legal action, did appellants turn in their shares of stock and accept the $43 per share sell-out price.

We cannot say as a matter of law that, with the merger a fait accompli, appellants were required to retain their worthless stock in Columbus Mills as a requisite to maintaining their ongoing suit against appellees. Rather, we agree with appellants that by accepting this protested payment for their otherwise valueless stock, they were not acquiescing in the merger or "accepting the benefit" of the merger but instead were following the mandate of OCGA § 51-12-11 by mitigating as far as was practicable the damages accruing as a result of appellees' alleged tortious breach of their fiduciary duty.

There is no Georgia law addressing the issue whether appellants' action constituted mitigation of damages or estoppel due to their acceptance of the benefits of the merger. One of the few cases from a foreign jurisdiction involving a similar fact situation not controlled by an exclusive statutory remedy is the Delaware case of *Bershad v. Curtiss-Wright Corp.*, 535 A2d 840 (SCt. Del., 1987), in which a plaintiff sought redress for an alleged illegal merger (after having "accepted the benefit" of the merger by tendering his shares for payment) in a narrow time frame prior to the effective date of Delaware's appraisal statute excluding all non-statutory remedies for dissenting shareholders. The Delaware court stated the plaintiff "acquiesced" in the merger by tendering his shares. However, unlike the case sub judice, the *merits* of the claim challenging the validity of the merger had been addressed and found wanting by both the trial court and the appellate court in *Bershad*, rendering the abbreviated decision that the plaintiff "acquiesced" in the merger mere dicta. The persuasiveness we find in the *Bershad* case lies not in its holding regarding any estoppel issues but in the fact *Bershad* addressed the merits of the claim before reaffirming the dismissal of that claim on estoppel grounds.

The fiduciary or quasi-fiduciary relationship existing between a corporate officer or director and the corporation's stockholders requires the utmost good faith in the actions taken by those officers and directors. " 'Directors and officers in the management and use of corporate property in which they act as fiduciaries and are trustees are charged with serving the interests of the . . . stockholders.' [Cit.] For a violation of these duties resulting in . . . injury to [the corporate] property, the directors and managers of a corporation are liable to account to the stockholders. [Cit.]" *Pelletier v. Schultz*, 157 Ga. App. 64, 66 (3) (b) (276 SE2d 118) (1981). We do not agree with appellees that appellants' acknowledgement of the accomplished fact of the merger and appellants' asserted mitigation of the damages which they claim stemmed from the alleged tortious breach of the fiduciary duty owed to them by appellees estopped appellants as a matter of law under the above authorities from pursuing their tort claim against appellees. Further, we note that while the breach of fiduciary duty was based primarily on appellants' assertion that the per share offer was grossly and unfairly under the value of the stock, it was not the sole alleged breach nor is recovery of the difference in stock value the sole damage available to appellants. See *Pelletier*, supra.

The dissent asserts that to allow appellants to maintain their cause of action for appellees' tortious breach of fiduciary duties in this situation would deprive OCGA § 14-2-251 of its efficacy since no shareholder would ever elect to invoke the statute's procedure. While the vast majority of the fundamental corporate changes as to which a

dissenting shareholder might pursue the appraisal procedure set forth in OCGA § 14-2-251 are probably straightforward, honest business decisions, the language in OCGA § 14-2-251 (j) demonstrates the Legislature's recognition that in the real world of business, some corporate acts are or might be tainted by fraud or other actions amounting to breaches of the fiduciary duty owed by a corporation's officers and directors to its shareholders. OCGA § 14-2-251 (j) thus allows the dissenting shareholders to pursue those causes of action stemming from such tainted misdealings rather than limiting the shareholders to the statutory appraisal remedy. We cannot agree with appellees or the dissent that allowing appellants to pursue relief through this lawsuit renders OCGA § 14-2-251 nothing more than an academic legislative exercise. Although appellees may have accurately predicted that dissenting shareholders will be disinclined to use the statutory appraisal method, preferring to institute and litigate independent legal action instead (but we note the existing remedy for any abusive litigation in *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414) (1986)), this matter is better addressed to the legislature, not the courts of this state.

Accordingly, the trial court's order granting summary judgment in favor of appellees is reversed.

*Judgment reversed. McMurray, P. J., Banke, P. J., Pope and Benham, JJ., concur. Birdsong, C. J., Deen, P. J., Carley and Beasley, JJ., dissent.*

CARLEY, Judge, dissenting.

This case is ultimately premised upon the alleged inadequacy of the $43 per share tender *offer* which was extended to the minority shareholders of stock in Columbus Mills, Inc. Under the undisputed evidence of record, appellants voluntarily *accepted* this allegedly inadequate offer and tendered their stock. It is my opinion that appellants' acceptance of the amount which was offered to them for the tender of their shares resulted in the loss of whatever legal right, if any, they may otherwise have had to pursue this litigation against appellees. Accordingly, I believe that the trial court correctly granted appellees' motion for summary judgment and, therefore, I respectfully dissent.

It is the established rule in Georgia that those stockholders in a corporation who have participated in the performance of an act, or who have acquiesced in and ratified an act, are thereafter estopped to complain thereof. See generally *Bloodworth v. Bloodworth*, 225 Ga. 379, 387 (1) (169 SE2d 150) (1969). None of the Georgia cases cited by the majority authorizes a holding that the principle of estoppel is *not* applicable under the facts of this case. In my opinion, the evidence of record establishes that, because appellants acquiesced in and ratified the $43 per share tender offer as the price which they would

accept for their stock, they should be estopped to assert that the tender offer was inadequate. Under the undisputed evidence of record, appellants did, in fact, make a post-merger tender of their shares, and they thereby accepted the original tender offer of $43 per share. Appellants were certainly not required to do so. After the merger, appellants were entirely free to continue to refuse to part with their shares for a price they considered inadequate and to seek an adequate price by pursuing the suit they had originally filed. In the alternative, they were also free to tender their stock and receive the price of $43 per share which had originally been offered to them. Accordingly, the tender of appellants' post-merger shares was determinative as to their status as former shareholders who had signified their acquiescence in the terms of the merger, which terms they had previously considered to be unfair to minority shareholders. "The acceptance of the benefit flowing from an unauthorized act amounts to an implied ratification of such act, whether the principal intends to ratify it or not. [Cits.] *Warner v. Hill*, 153 Ga. 510, 513 (112 SE 478) (1922).

The majority holds that appellants, by tendering their stock and receiving the price of $43 per share for doing so, were merely mitigating their damages. However, appellants were seeking to recover as damages the amount by which the alleged actual value of their stock *exceeded* the tender offer price of $43 per share. Accordingly, only by their receipt of a sum in *excess of $43* per share could appellants' post-merger relinquishment of their shares be deemed to be in mitigation of the damages which they had allegedly sustained. The acceptance of the $43 tender offer represents, instead, an acquiescence in and ratification of the very merger terms which, according to appellants, appellees had wrongfully approved as a fair offer to minority shareholders. Thus, the act which the majority cites as evidence of appellants' mere mitigation of their damages shows, instead, appellants' estoppel to assert that they suffered any recoverable damages at all. See *Warner v. Hill*, supra.

The majority is correct insofar as it holds that appellants, as dissenting shareholders to the terms of the merger, were not required to invoke the provisions of OCGA § 14-2-251 to determine the fair value of their stock. "If a shareholder does not enforce his dissenter's rights pursuant to this Code section . . . , nothing in this Code section shall be construed as barring him from bringing or maintaining *an appropriate action* to obtain relief on the ground that the corporate action in question will be or is unlawful or fraudulent as to him." (Emphasis supplied.) OCGA § 14-2-251 (j). However, the majority's determination that the principle of estoppel is not applicable here and that the case at bar constitutes appellants' maintenance of an "appropriate action" is a holding which will render OCGA § 14-2-251 no more than a statutory relic.

If the majority were correct, then no shareholder who dissented to the terms of a tender offer would *ever* elect to invoke the provisions of OCGA § 14-2-251. Under that provision, the possibility exists that the value of a dissenting shareholder's stock could be determined to be *less* than the amount of the tender offer. The effect of the majority opinion is, however, to endorse a shareholder's right to accept the tender offer from which he purportedly dissents, without losing his right as a litigant to continue to contest the adequacy of that previously accepted offer. Under the majority's opinion, a dissenting shareholder could be assured of the immediate receipt and use of the amount of the tender offer as an established minimum value for his shares, and also thereby preserve the possibility of his receipt of additional compensation in the form of a settlement or a judgment. Therefore, the majority's failure to recognize the applicability of the principle of estoppel in this case will render the enactment of OCGA § 14-2-251 no more than an academic legislative exercise and encourage litigation by the former dissenting shareholders of a merged corporation.

The majority's holding is contrary to the general principle of estoppel which is recognized in this state. "No one can maintain an action for a wrong done, where he has consented or contributed to the act which occasions the loss." *Peacock v. Terry*, 9 Ga. 137 (3) (1850). The majority's conclusion is also inconsistent with the express decisions which have been rendered by the courts of other jurisdictions. "[W]hen an informed minority shareholder either votes in favor of the merger, or . . . accepts the benefits of the transaction, he or she cannot thereafter attack its fairness. [Cit.] Since [the plaintiff] tendered his shares and accepted the merger consideration, he acquiesced in the transaction and cannot now attack it." *Bershad v. Curtiss-Wright Corp.*, 535 A2d 840, 848 (13) (S.C. Del. 1987). Although the *Bershad* decision is not controlling authority, the majority's efforts to discount its persuasiveness are unavailing. Contrary to the majority's opinion, the above-quoted holding in *Bershad* was certainly not "dicta." It specifically addressed the alleged inadequacy of the price for which the plaintiff in that case had tendered his shares, which was one of several grounds upon which the merger had been attacked.

The majority's failure to distinguish either those existing Georgia decisions which relate to the general principle of estoppel or those persuasive decisions of other jurisdictions which relate to the exact issue raised in this case demonstrates the error of its holding that appellants are entitled to pursue this legal action against appellees. Accordingly, I must respectfully dissent from the majority's reversal of the grant of summary judgment in favor of appellees.

I am authorized to state that Chief Judge Birdsong and Judge

Beasley join in this dissent.

DECIDED JULY 13, 1988 —
REHEARING DENIED JULY 28, 1988

*Thomas R. Burnside, Jr., James B. Wall,* for appellants.
*Frank C. Jones, Nolan C. Leake, David F. Guldenschuh,* for appellees.